Gayle VOSS, City Clerk of the City of Greeley, a municipal corporation, Vitus Einsphar, Fire Chief, City of Greeley Fire Department, the Election Board of the City of Greeley, a municipal corporation, the City Council of the City of Greeley, a body politic, and the City of Greeley, a municipal corporation, Petitioners,

v.

LUNDVALL BROTHERS, INC., a Colorado corporation, d/b/a Lundvall Oil and Gas, Inc., Bellwether Exploration Company, Hertzke Brothers, a partnership, Conquest Oil Company, Colorado Oil and Gas Conservation Commission, and Langford Resources, a Colorado general partnership, Respondents.

No. 91SC169.

Supreme Court of Colorado,
En Banc.

June 8, 1992.

Richard P. Brady, George N. Monsson, Greeley, for petitioners.

James J. Peyton, Lind, Lawrence & Ottenhoff, George H. Ottenhoff, Kenneth F. Lind, Greeley, for respondents Lundvall Bros., Inc., a Colorado corp., d/b/a Lundvall Oil and Gas, Inc.; Bellwether Exploration Co., Hertzke Bros., and Conquest Oil Co.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Patricia S. Bangert, Deputy Atty. Gen., Jerry W. Goad, First Asst. Atty. Gen., Timothy J. Monahan, Asst. Atty. Gen., Denver, for respondent Colorado Oil and Gas Conservation Com'n.

Randolph W. Starr, P.C., Randolph W. Starr, Loveland, for respondent Langford Resources.

Charles H. Richardson, Robert M. Rogers, Aurora, for amicus curiae City of Aurora, Colo.

Gorsuch, Kirgis, Campbell, Walker and Grover, William A. Keefe, Hugh V. Schaefer, Kenneth A. Wonstolen, Denver, for amicus curiae Colorado Petroleum Ass'n.

Geoffrey T. Wilson, Denver, for amicus curiae Colorado Mun. League.

Lohf, Shalman & Ross, P.C., J. Michael Morgan, David G. Ebner, Denver, for amici curiae Colorado Oil and Gas Ass'n and Independent Petroleum Ass'n of the Mountain States.

Justice QUINN delivered the Opinion of the Court.

The questions in this case are whether the Oil and Gas Conservation Act, §§ 34–60–101 to –126, 14 C.R.S. (1984 & 1991 Supp.), preempts a home-rule city from enacting a land-use ordinance that imposes a total ban on the drilling of any oil, gas, or hydrocarbon wells within the city and whether any such preemption would violate article V, section 35 of the Colorado Constitution, which prohibits the delegation of a municipal function to a special commission. In *Lundvall Bros., Inc. v. Voss*, 812 P.2d 693 (Colo.App.1990), the court of appeals addressed only the preemption issue and held that, because the development of oil and gas resources is a matter of statewide concern, the Oil and Gas Conservation Act preempts a home-rule city from regulating any aspect of oil and gas development or operations within the city. We affirm the judgment of the court of appeals, but we do so for reasons different from those relied on by the court in its opinion. We hold that while the Oil and Gas Conservation Act does not totally preempt a home-rule city's exercise of land-use authority over oil and gas development and operations within the territorial limits of the city, the statewide interest in the efficient development and production of oil and gas resources in a manner calculated to prevent waste, as well as in protecting the correlative rights of owners and producers in a common pool or source to a just and equitable share of the profits of production, prevents a home-rule city from exercising its land-use authority so as to totally ban the drilling of oil, gas, or hydrocarbon wells within the city. We also conclude that the state preemption of a home-rule city's total ban on drilling does not violate article V, section 35 of the Colorado Constitution.

I.

The City of Greeley is a home-rule city. On August 6, 1985, Lundvall Brothers, Inc., a Colorado corporation engaged in oil and gas development, obtained a permit from the city to drill four gas wells on property located in a multi-family residential zone.

Lundvall Brothers also obtained a permit from the Oil and Gas Conservation Commission to drill for oil and gas on the same property. Before Lundvall Brothers commenced drilling operations, a petition was submitted to the Greeley City Council to refer to the electorate an ordinance prohibiting "[t]he drilling of any well for the purpose of exploration or production of any oil or gas or other hydrocarbons within the corporate limits of the [c]ity" and that "[a]ny ordinance or any part of any ordinance in conflict [herewith] is hereby repealed." Greeley Ordinance No. 89, §§ 1 & 2 (1985). The ordinance provided that each day a violation occurs shall constitute a separate offense, which is punishable by a fine of up to one-thousand dollars and a jail sentence of up to ninety days. Greeley Ordinance No. 89, § 3 (1985). The ordinance was to become effective after its adoption and approval by the electorate at a regular* municipal election on November 5, 1985, and its publication according to law. Greeley Ordinance No. 89, § 4 (1985). On September 17, 1985, the city clerk determined that the petition contained sufficient signatures for referring the measure to the electorate, and the city council accepted the referendum petition on that same date. Ordinance No. 89 was subsequently approved by the electorate at the regular municipal election.

The Greeley City Council enacted a separate ordinance, Greeley Ordinance No. 90, which also prohibited "the drilling of any well for the purpose of exploration or pro-

duction of any oil or gas or other hydrocarbons within the corporate limits of the [c]ity" and repealed any conflicting ordinance. Greeley Ordinance No. 90, §§ 1 & 2 (1985).[1] Ordinance No. 90 was adopted on September 17, 1985, and became effective five days after its publication. Greeley Ordinance No. 90, § 4 (1985). Because Ordinance No. 90 created an immediate ban on the drilling of any oil or gas well within the city, it had the effect of nullifying the permit previously granted to Lundvall Brothers on August 6, 1985.

Lundvall Brothers filed an action for declaratory relief which was subsequently consolidated with similar actions filed by oil and gas developers and various owners of oil and gas leases. As pertinent here, Lundvall Brothers and the other plaintiffs sought a declaration that Greeley Ordinance Nos. 89 & 90 were null and void and did not divest them of their respective rights under the Oil and Gas Conservation Act and the permits issued by the Oil and Gas Conservation Commission. The trial court granted summary judgment in favor of Lundvall Brothers and the other plaintiffs, ruling that Greeley Ordinance Nos. 89 & 90 were facially void because "the entire area of oil and gas exploration regulation, including the location of sites within municipalities [has] been preempted by the State of Colorado and [has been] delegated to the Oil and Gas Conservation Commission" and that, consequently, "there is no area of regulation of oil and gas exploration left to the City of Greeley."[2]

1. Other than the effective date of Ordinance Nos. 89 and 90, the only substantive difference is in section three of each ordinance. Ordinance No. 89 imposes a fine of one-thousand dollars and a jail sentence of up to ninety days for each violation of the ordinance, while section three of Ordinance No. 90 states that any violation shall be punished as provided by section 3–4 of the Greeley City Charter and Chapter 1.32 of the Greeley Municipal Code. The Greeley Charter provides for a maximum fine of one-thousand dollars, one year imprisonment, or both, for an ordinance violation. The Greeley Municipal Code provides for a maximum fine of not more than nine-hundred ninety-nine dollars, or ninety days imprisonment, or both, for an ordinance violation.

2. In November 1987 Greeley amended its municipal code to permit drilling and exploration

for oil and gas in industrial zones of the city as a use by special review and subject to various requirements. Greeley Municipal Code, § 18.-40.230 (1987). For several reasons, we do not consider the effect of the 1987 amendment on the preemption issue. First, the effect of the 1987 amendment was not raised in the complaint or answer filed in the consolidated proceedings in the district court. Second, although passing reference was made to the amendment in the summary judgment proceeding, the trial court's resolution of the summary judgment motion was based solely on the total drilling and exploration ban created by the 1985 ordinances. The court of appeals likewise resolved this case on the basis of the 1985 ordinances and made no mention of the 1987 amendment. *See generally United States Fidelity & Guaranty Co. v. Newton*, 50 Colo. 379, 115 P. 897 (1911) (review-

The City of Greeley appealed to the court of appeals, which affirmed the judgment. The court of appeals acknowledged that a home-rule city derives its power from the Home–Rule Amendment of the Colorado Constitution, Colo. Const. art. XX, § 6, and in that respect has greater authority over local matters than a county, which is a political subdivision of the state. *Lundvall Brothers*, 812 P.2d at 694. Notwithstanding that distinction, the court concluded that the state's interest in oil and gas development and production, as manifested in the Oil and Gas Conservation Act, is a matter of statewide concern which requires uniformity of regulation and leaves no room for local regulation and that, therefore, the regulation of oil and gas development within a home-rule city, including the use of land required for those activities, is within the exclusive regulatory authority of the Oil and Gas Conservation Commission. *Id.* at 694–95. We granted Greeley's petition for certiorari to review the decision of the court of appeals.

## II.

In *Bowen/Edwards Assocs. Inc. v. Board of County Commissioners of La Plata County*, 830 P.2d 1045 (Colo.1992), issued today, we held that the Oil and Gas Conservation Act, §§ 34–60–101 to –126, 14 C.R.S. (1984 & 1991 Supp.), does not totally preempt a county from exercising its land-use authority over any and all aspects of oil and gas development and operations in unincorporated areas of the county. In the instant case we must determine whether the scope of Greeley's authority as a home-rule city to regulate land use within its municipal borders extends to a total ban on the drilling of an oil, gas, or hydrocarbon well within the city limits. The answer to that question depends on whether Greeley's authority to impose a total ban has been preempted by the Oil and Gas Conser-

vation Act. As a backdrop to our preemption analysis, we briefly review the land-use authority of a home-rule city and those provisions of the Oil and Gas Conservation Act which delineate the nature and scope of the state's interest in oil and gas development and operations.

## A.

■ The Home–Rule Amendment, Colo. Const. art. XX, § 6, grants home-rule cities "the full right of self-government in both local and municipal matters." This constitutional provision further provides that a home-rule city's ordinances pertaining to local and municipal matters "shall supersede within the territorial limits ... any law of the state in conflict therewith." In addition, the Home–Rule Amendment expressly states that "the enumeration herein of certain powers shall not be construed to deny cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right." The effect of the Home–Rule Amendment is to grant to a home-rule city "every power possessed by the General Assembly as to local and municipal matters, unless restricted by the terms of the city's charter." *VFW Post 4264 v. City of Steamboat Springs*, 195 Colo. 44, 50, 575 P.2d 835, 840 (1978).

Our case law has recognized that the exercise of zoning authority for the purpose of controlling land use within a home-rule city's municipal borders is a matter of local concern. *E.g., National Advertising Co. v. Department of Highways*, 751 P.2d 632, 635 (Colo.1988); *VFW Post 4264*, 195 Colo. at 50, 575 P.2d at 840; *City of Greeley v. Ells, Jr.*, 186 Colo. 352, 357–58, 527 P.2d 538, 541 (1974); *Roosevelt v. City of Englewood*, 176 Colo. 576, 586, 492 P.2d 65, 70 (1971). Colorado statutory law evidences further confirmation of a home-rule city's authority to control land use within

ing court will accept the pleadings in the manner in which they were construed and accepted in the court below). Moreover, any determination of the effect of the 1987 amendment on the preemption issue requires an adequately developed factual record, and no such record is before us in this case. Last, we granted certiorari

on whether Greeley's *total ban* was preempted by the Oil and Gas Conservation Act. Of course, the City of Greeley or any other person affected by the 1987 amendment may bring a separate declaratory action to resolve the effect of the 1987 amendment on oil and gas development and operations within the city.

its municipal borders. The Local Government Land Use Control Enabling Act of 1974, §§ 29–20–101 to –107, 12A C.R.S. (1986 & 1991 Supp.), expressly grants local governments broad authority to plan for and regulate the use of land within their respective jurisdictions, § 29–20–102, 12A C.R.S. (1986), and defines "local government" as a county, home-rule or statutory city, town, territorial charter city, or city and county, § 29–20–103(1), 12A C.R.S. (1986). The statutory scheme, without intending to limit any power or authority granted to a home-rule city by the Colorado Constitution, provides each local government with the authority to: regulate development and activities in hazardous areas; protect land from activities which would cause immediate or foreseeable material damage to significant wildlife habitat and would endanger wildlife species; regulate the establishment of roads on public lands administered by the federal government; regulate the location of activities and development that may result in significant changes in population density; provide for phased development of activities and facilities; regulate the use of land on the basis of its impact on the community or surrounding areas; and regulate the use of land so as to provide for its orderly use and the protection of the environment in a manner consistent with constitutional rights. § 29–20–104(1), 12A C.R.S. (1986).

The state has an interest in oil and gas development and operations. That interest finds expression in the Oil and Gas Conservation Act. §§ 34–60–101 to –126, 14 C.R.S. (1984 & 1991 Supp.). The declared purposes of the act are

to foster, encourage, and promote the development, production, and utilization of the natural resources of oil and gas in the state of Colorado; to protect the public and private interests against the evils of waste in the production and utilization of oil and gas by prohibiting waste; [and] to safeguard, protect, and enforce the coequal and correlative rights of owners and producers in a common source or pool of oil and gas to the end that each such owner and producer in a common pool or source of supply of

oil and gas may obtain his just and equitable share of production therefrom. § 34–60–102(1), 14 C.R.S. (1984). The Oil and Gas Conservation Act establishes the Oil and Gas Conservation Commission and vests the commission with authority to enforce the provisions of the act, to make and enforce rules and orders pursuant to the act, and to do whatever may reasonably be necessary to carry out the provisions of the act. § 34–60–105(1), 14 C.R.S. (1984).

In *Bowen/Edwards*, 830 P.2d at 1049, we summarized the authority of the Oil and Gas Commission as follows:

In addition to issuing permits for oil and gas drilling operations, the commission is authorized to regulate the drilling, production, and plugging of wells, the shooting and chemical treatment of wells, the spacing of wells, and the disposal of salt water and oil field wastes, § 34–60–106(2), 14 C.R.S. (1984), as well as to limit production from any pool or field for the prevention of waste and to allocate production from a pool or field among or between tracts of land having separate ownership on a fair and equitable basis so that each tract will produce no more than its fair and equitable share, § 34–60–106(3)(a), 14 C.R.S. (1984). The Oil and Gas Conservation Act contains an extensive list of technical requirements relating to developmental and operational aspects of oil and gas production, which the commission is authorized to enforce.

In 1985 the General Assembly amended the Oil and Gas Conservation Act to provide the commission with additional powers. Included within the 1985 amendments ... is the commission's authority to "promulgate rules and regulations to protect the health, safety, and welfare of the general public in the drilling, completion, and operation of oil and gas wells and production facilities." § 34–60–106(11), 14 C.R.S. (1991 Supp.). [Footnote omitted].

There is no question that the Oil and Gas Conservation Act evidences a significant interest on the part of the state in the efficient and fair development, production,

and utilization of oil and gas resources in a manner calculated "to prevent waste and to protect the correlative rights of common-source owners and producers to a fair share of the production profits." *Bowen/Edwards*, 830 P.2d at 1058.

## B.

■■ In light of the interest of a home-rule city in land-use control within its territorial limits and the interest of the state in promoting the efficient and fair development, production, and utilization of oil and gas resources in the state, the threshold consideration in this case is whether Greeley's total ban on the drilling of oil, gas, or hydrocarbon wells within the city derives from a purely local concern. It is a well-established principle of Colorado preemption doctrine that in a matter of a purely local concern an ordinance of a home-rule city supersedes a conflicting state statute, while in a matter of purely statewide concern a state statute or regulation supersedes a conflicting ordinance of a home-rule city. *E.g., National Advertising,* 751 P.2d at 635; *DeLong v. City and County of Denver,* 195 Colo. 27, 31, 576 P.2d 537, 539–40 (1978); *Davis v. City and County of Denver,* 140 Colo. 30, 35, 342 P.2d 674, 676 (1959). Our case law, however, has recognized that municipal legislation is not always a matter of exclusive local or statewide concern but, rather, is often a matter of concern to both levels of government:

Although we have found it useful to employ the "local," "mixed," and "statewide" categories in resolving conflicts between local and state legislation, these legal categories should not be mistaken for mutually exclusive or factually perfect descriptions of the relevant interests of the state and local governments. Those affairs which are municipal, mixed or of statewide concern often imperceptibly merge. *Fossett v. State,* 34 Okl.Cr. 106, 107, 245 P. 668, 669 (1926). To state that a matter is of local concern is to draw a legal conclusion based on all the facts and circumstances presented by a case. In fact, there may exist a relatively minor state interest in the matter at issue but we characterize the matter as local to express our conclusion that, in the context of our constitutional scheme, the local regulation must prevail.

*City and County of Denver v. State of Colorado,* 788 P.2d 764, 767 (Colo.1990). In matters of mixed local and state concern, a home-rule municipal ordinance may coexist with a state statute as long as there is no conflict between the ordinance and the statute, but in the event of a conflict, the state statute supersedes the conflicting provision of the ordinance. *Denver v. State,* 788 P.2d at 767; *National Advertising,* 751 P.2d at 635; *City and County of Denver v. Colorado River Water Conservation Dist.,* 696 P.2d 730, 740–41 (Colo. 1985); *DeLong,* 195 Colo. at 32, 576 P.2d at 540.

There is no question that the city of Greeley has an interest in land-use control within its municipal borders. It is also settled, as evidenced by our decision in *Bowen/Edwards,* that nothing in the Oil and Gas Conservation Act manifests a legislative intent to expressly or impliedly preempt all aspects of a local government's land-use authority over land that might be subject to oil and gas development and operations within the boundaries of a local government. *See Bowen/Edwards,* 830 P.2d at 1059. To say as much, however, is not to imply that Greeley may totally ban the drilling of any oil, gas, or hydrocarbon well within the city. In view of the state's interest in oil and gas development and operations, and in light of the authority vested in the Oil and Gas Conservation Commission to regulate oil and gas development and operations throughout the state, we must analyze Greeley's total ban on drilling against the state regulatory scheme to determine if the Greeley ordinances conflict with the state's interest in the efficient production and development of oil and gas resources in a manner preventative of waste and protective of the rights of common-source owners and producers to a fair and equitable share of production profits.

## C.

■■ In determining whether the state regulatory scheme preempts the Greeley

ordinances, we draw upon the preemption analysis used by this court in *Denver v. State*, 788 P.2d 764, where we considered four factors in resolving whether the state's interest in prohibiting a municipality from adopting a residency requirement for municipal employment was sufficient to justify preemption of an inconsistent home-rule residency requirement as a condition of municipal employment. Those four factors are: whether there is a need for statewide uniformity of regulation; whether the municipal regulation has an extraterritorial impact; whether the subject matter is one traditionally governed by state or local government; and whether the Colorado Constitution specifically commits the particular matter to state or local regulation. *Id.* at 768.

The first factor—the need for statewide uniformity of regulation of oil and gas development and production—weighs heavily in favor of state preemption of Greeley's total ban on drilling within city limits. The intended effect of the Greeley ordinances is to prohibit all oil and gas development and operations at any location within the city. Oil and gas are found in subterranean pools, the boundaries of which do not conform to any jurisdictional pattern. As a result, certain drilling methods are necessary for the productive recovery of these resources. The Oil and Gas Conservation Commission emphasizes in its brief, as does Lundvall Brothers, that it is often necessary to drill wells in a pattern dictated by the pressure characteristics of the pool, and because each well will only drain a portion of the pool, an irregular drilling pattern will result in less than optimal re-covery and a corresponding waste of oil and gas.[3] Moreover, an irregular drilling pattern can impact on the correlative rights of the owners of oil and gas interests in a common source or pool by exaggerating production in one area and depressing it in another. Because oil and gas production is closely tied to well location, Greeley's total ban on drilling within the city limits could result in uneven and potentially wasteful production of oil and gas from pools which underlie the city but extend beyond the city to land where production is not prohibited by a total drilling ban. Greeley's total ban, in that situation, would conflict with the Oil and Gas Conservation Commission's express authority to divide a pool of oil or gas into drilling units and to limit the production of the pool so as to prevent waste and to protect the correlative rights of owners and producers in the common source or pool to a fair and equitable share of production profits. §§ 34–60–116 & –117, 14 C.R.S. (1984 & 1991 Supp.). In our view, the state's interest in the efficient and fair development and production of oil and gas resources in the state, including the location and spacing of individual wells, militates against a home-rule city's total ban on drilling within the city limits.

The extraterritorial effect of the Greeley ordinances also weighs in favor of the state's interest in effective and fair development and production, again based primarily on the pooling nature of oil and gas. Limiting production to only one portion of a pool outside the city limits can result in an increased production cost, with the result that the total drilling operation may be

---

**3.** Section 34–60–103(11), 14 C.R.S. (1984), defines "waste" as applied to gas to include "the production of gas in quantities or in such manner as unreasonably reduces reservoir pressure or unreasonably diminishes the quantity of oil or gas that ultimately may be produced." Section 34–60–103(12), 14 C.R.S. (1984), defines "waste" as applied to oil to include underground waste, inefficient or improper use or dissipation of reservoir energy, and waste incident to the production of oil in excess of the producer's aboveground storage facility. Section 34–60–103(13), 14 C.R.S. (1984), states that in addition to the other statutory meanings of "waste," the term also includes the following:

(b) The locating, spacing, drilling, equipping, operating, or producing of any oil or gas well or wells in a manner which causes or tends to cause reduction in quantity of oil or gas ultimately recoverable from a pool under prudent and proper operations or which causes or tends to cause unnecessary or excessive surface loss or destruction of oil or gas;

(c) Abuse of the correlative rights of any owner in a pool due to nonuniform, disproportionate, unratable, or excessive withdrawals of oil or gas therefrom, causing reasonably avoidable drainage between tracts of land or resulting in one or more producers or owners in such pool producing more than his equitable share of the oil or gas from such pool.

economically unfeasible. Greeley's total drilling ban thus affects the ability of nonresident owners of oil and gas interests in pools that underlie both the city and land outside the city to obtain an equitable share of production profits in contravention of one of the statutory purposes of the Oil and Gas Conservation Act.

Furthermore, the regulation of oil and gas development and production has traditionally been a matter of state rather than local control. State control of oil and gas development and production commenced in 1915 when the General Assembly created the office of the State Oil Inspector and imposed several requirements on the operation of oil and gas wells, including the prevention of waste, plugging upon abandonment, and well location. Ch. 126, sections 29, 30 & 32, 1915 Colo.Sess.Laws 367, 374–75. In 1927 the General Assembly created the Gas Conservation Commission with authority to adopt rules and regulations for the conservation of oil and gas resources and the prevention of waste and to impose penalties for violation of its rules and regulations. Ch. 138, sections 3 & 4, 1927 Colo.Sess.Laws 525, 526–27. This legislative history demonstrates that the state has exercised significant control over these activities, but not in a manner preemptive of all local government land-use authority.

Finally, we note that the Colorado Constitution neither commits the development and production of oil and gas resources to state regulation nor relegates land-use control exclusively to local governments. We, however, have previously held that a home-rule city can exercise control over outdoor advertising within its borders under its zoning authority only to the extent that the local ordinance does not materially impede the significant state goals expressed in the Outdoor Advertising Act, §§ 43–1–401 to – 420, 17 C.R.S. (1984 & 1991 Supp.). *National Advertising*, 751 P.2d at 635. The same principle applies to a home-rule city's exercise of land-use authority over oil and gas development and production within the territorial limits of the city.

We conclude that the state's interest in efficient oil and gas development and production throughout the state, as manifest-ed in the Oil and Gas Conservation Act, is sufficiently dominant to override a home-rule city's imposition of a total ban on the drilling of any oil, gas, or hydrocarbon wells within the city limits. Because oil and gas pools do not conform to the boundaries of local government, Greeley's total ban on drilling within the city limits substantially impedes the interest of the state in fostering the efficient development and production of oil and gas resources in a manner that prevents waste and that furthers the correlative rights of owners and producers in a common pool or source of supply to a just and equitable share of profits. In so holding, we do not mean to imply that Greeley is prohibited from exercising any land-use authority over those areas of the city in which oil and gas activities are occurring or are contemplated. What we said in *Bowen/Edwards* concerning the land-use authority of a county applies to a home-rule city:

> There is no question that the efficient and equitable development and production of oil and gas resources within the state requires uniform regulation of the technical aspects of drilling, pumping, plugging, waste prevention, safety precautions, and environmental restoration. Oil and gas production is closely tied to well location, with the result that the need for uniform regulation extends also to the location and spacing of wells.... The state's interest in uniform regulation of these and similar matters, however, does not militate in favor of an implied legislative intent to preempt all aspects of a county's statutory authority to regulate land use within its jurisdiction merely because the land is an actual or potential source of oil and gas development and operations. The state's interest in oil and gas activities is not so patently dominant over a county's interest in land-use control, nor are the respective interests of both the state and the county so irreconcilably in conflict, as to eliminate by necessary implication any prospect for a harmonious application of both regulatory schemes. (Citations omitted).

*Bowen/Edwards*, 830 P.2d at 1058.

If a home-rule city, instead of imposing a total ban on all drilling within the city,

enacts land-use regulations applicable to various aspects of oil and gas development and operations within the city, and if such regulations do not frustrate and can be harmonized with the development and production of oil and gas in a manner consistent with the stated goals of the Oil and Gas Conservation Act, the city's regulations should be given effect. We thus do not conclude, as did the court of appeals, that there is no room whatever for local land-use control over those areas of a home-rule city where drilling for oil, gas, or hydrocarbon wells is about to take place. Because, however, both the district court and the court of appeals decided the preemption issue on the basis of Greeley's *total exclusion* of all drilling operations, we also resolve this case on the basis of the *total ban* created by Greeley Ordinance Nos. 89 and 90. We hold that the state's interest in efficient development and production of oil and gas in a manner preventative of waste and protective of the correlative rights of common-source owners and producers to a fair share of production profits preempts a home-rule city from totally excluding all drilling operations within the city limits.

### III.

■ We need not labor long over whether the state preemption of the Greeley ordinance violates article V, section 35 of the Colorado Constitution, which provides as follows:

> The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever.

We are satisfied that the state preemption of the Greeley ordinances does not violate this constitutional provision.

The purpose of article V, section 35 of the Colorado Constitution is to prevent a legislative commission from intruding upon a city's right of self-government in matters of local concern. *E.g., Denver & Rio Grande Western R.R. Co. v. City and County of Denver,* 673 P.2d 354, 362 (Colo. 1983); *City and County of Denver v. Eggert,* 647 P.2d 216, 226–27 (Colo.1982); *Denver Urban Renewal Authority v. Byrne,* 618 P.2d 1374, 1385–86 (Colo.1980). The Oil and Gas Conservation Commission is a statutory commission created to administer and enforce the provisions of the Oil and Gas Conservation Act. As such, the commission is a body separate and distinct from city government. Because the regulation of land use within a city is a municipal function, article V, section 35 of the Colorado Constitution prohibits the commission from performing that municipal function. The commission's exercise of authority, however, is not directed to municipal land use but rather to the effectuation of the state's legitimate concern for the efficient and fair development and production of oil and gas resources within the state.

The authority vested in the commission to promulgate and enforce regulations applicable to oil and gas development and production, including well location and spacing requirements, is not intended to involve the commission in land-use planning and control within a municipality, but rather is specifically designed to permit the commission to carry out its statutory charge. Because of the important state interest in oil and gas development and operations, the Oil and Gas Conservation Commission's exercise of authority over oil and gas activities within a home-rule city does not intrude upon a municipal function of purely local concern in violation of article V, section 35 of the Colorado Constitution.

For the above reasons, we affirm the judgment of the court of appeals.