2016 CO 28

**CITY OF FORT COLLINS, Petitioner**

v.

**COLORADO OIL and Gas Association, Respondent.**

Supreme Court Case No. 15SC668

Supreme Court of Colorado.

May 2, 2016

Attorneys for Petitioner: Sullivan Green Seavy, LLC, Barbara J.B. Green, John T. Sullivan, Boulder, Colorado, Fort Collins City Attorney's Office, Carrie M. Daggett, John R. Duval, Fort Collins, Colorado.

Attorneys for Respondent: Brownstein Hyatt Farber Schreck, LLP, Mark Mathews, Wayne F. Forman, Justin L. Cohen, Denver, Colorado.

Attorneys for Amicus Curiae American Petroleum Institute: Ryley Carlock & Applewhite, Richard C. Kaufman, Allison P. Altaras, Denver, Colorado.

Attorneys for Amicus Curiae Board of County Commissioners of the County of Boulder, State of Colorado: Goldman, Robbins & Nicholson, P.C., Jeffery P. Robbins, Durango, Colorado.

Attorneys for Amici Curiae Citizens for a Healthy Fort Collins, Sierra Club, and Earthworks: University of Denver Environmental Law Clinic, Kevin Lynch, Brad Bartlett, Denver, Colorado.

Attorneys for Amicus Curiae City of Boulder: Office of the City Attorney, Thomas A. Carr, City Attorney, Boulder, Colorado.

Attorneys for Amici Curiae Colorado Concern, Denver Metro Chamber of Commerce, Colorado Competitive Council, Colorado Motor Carriers Association, and Colorado Farm Bureau: Brownstein Hyatt Farber Schreck, LLP, Jason R. Dunn, Denver, Colorado.

Attorneys for Amicus Curiae Colorado Municipal League: Colorado Municipal League, Geoffrey T. Wilson, Denver, Colorado.

Attorneys for Amicus Curiae Conservation Colorado: Earthjustice, Michael Freeman, Denver, Colorado.

Attorneys for Amicus Curiae National Association of Royalty Owners Colorado Chapter: Lindquist & Vennum LLP, Thomas W. Niebrugge, Denver, Colorado.

Attorneys for Amicus Curiae Northwest Colorado Council of Governments: Northwest Colorado Council of Governments, Torie Jarvis, Silverthorne, Colorado.

Attorney for Amicus Curiae Congressman Jared Polis: Courtney J. Krause, Denver, Colorado.

JUSTICE GABRIEL delivered the Opinion of the Court.

¶ 1 This case comes to us on review of the Larimer County District Court's order invalidating the city of Fort Collins's five-year moratorium on fracking and the storage of fracking waste within the city. As in *City of Longmont v. Colorado Oil and Gas Association*, 2016 CO 29, 369 P.3d 573, which we also decide today and which invalidated the city of Longmont's bans on fracking and the storage and disposal of fracking waste, this case presents us with the narrow question of whether state law preempts Fort Collins's fracking moratorium.

¶ 2 We conclude that because fracking is a matter of mixed state and local concern, Fort Collins's fracking moratorium is subject to preemption by state law. Applying well-established preemption principles, we further conclude that Fort Collins's five-year moratorium on fracking and the storage of fracking waste operationally conflicts with the effectuation of state law. Accordingly, we hold that the moratorium is preempted by state law and is, therefore, invalid and unenforceable. We thus affirm the district court's order and remand this case for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 3 At an election held on November 5, 2013, the citizens of Fort Collins, a home-rule city, voted in favor of the following proposed citizen-initiated ordinance:

An ordinance placing a moratorium on hydraulic fracturing and the storage of its waste products within the City of Fort Collins or on lands under its jurisdiction for a period of five years, without exemption or exception, in order to fully study the impacts of this process on property values and human health, which moratorium can be lifted upon a ballot measure approved by the people of the City of Fort Collins and which shall apply retroactively as of the date this measure was found to have qualified for placement on the ballot.

The moratorium thus prohibits operators from fracking or storing fracking waste in Fort Collins until 2018, barring further action by Fort Collins voters.

¶ 4 After voters approved the moratorium, Fort Collins amended its municipal code to provide, "The use of hydraulic fracturing to extract oil, gas or other hydrocarbons, and the storage in open pits of solid or liquid wastes and/or flowback created in connection with the hydraulic fracturing process, are prohibited within the City." Fort Collins, Colo., Code § 12–135 (2015). Certain wells that existed prior to the amendment, however, are exempt from this prohibition, as long as such wells were subject to operator agreements between the operators of the wells and Fort Collins that restricted the release of methane and "in the judgment of the City Council, adequately protected the public health, safety and welfare." *Id.* § 12–136.

¶ 5 Thereafter, the Colorado Oil and Gas Association (the Association), an industry organization, sued Fort Collins and requested (1) a declaratory judgment declaring that the Oil and Gas Conservation Act, §§ 34–60–101 to –130, C.R.S. (2015), and the rules and regulations promulgated pursuant thereto preempt Fort Collins's fracking moratorium and (2) a permanent injunction enjoining the enforcement of the moratorium. The Association subsequently moved for summary judgment on its declaratory judgment claim, and Fort Collins filed a cross-motion for summary judgment, asking the district court to find that the moratorium was not preempted by state law.

¶ 6 The district court ultimately granted the Association's motion and denied Fort Collins's cross-motion. The court noted that state law may preempt a home-rule city's ordinance, including a moratorium, expressly, impliedly, or because of an operational conflict. The court then concluded that although "[t]he [Oil and Gas Conservation] Act does not expressly preempt all local regulation of drilling," it impliedly preempts Fort Collins's moratorium. The court further concluded that the moratorium was also preempted "because it conflicts with the application of the [Oil and Gas Conservation] Act." Accordingly, the court granted the Association's request for a declaratory judgment that the Oil and Gas Conservation Act and the rules and regulations promulgated pursuant thereto preempt the moratorium.

¶ 7 Fort Collins appealed the district court's order to the Colorado Court of Appeals, and a number of interested parties filed amicus curiae briefs. Before hearing oral argument, however, a division of the court of appeals requested a transfer of this case to this court pursuant to section 13–4–109, C.R.S. (2015), and C.A.R. 50. We accepted the transfer, and Fort Collins now argues that the district court erred in concluding that state law preempts its moratorium on fracking and the storage of fracking waste.

## II. Standard of Review

¶ 8 The Colorado Rules of Civil Procedure allow a district court to enter summary judgment before trial when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c). In determining whether summary judgment is proper, a district court grants the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolves all doubts against the moving party. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83 (Colo.1999). In responding to a properly supported summary judgment motion, however, the nonmoving party may not rest on its mere allegations or denials of the opposing party's pleadings but must provide specific facts demonstrating a genuine issue for trial. C.R.C.P. 56(e).

¶ 9 In reviewing a summary judgment order, an appellate court applies the same standard as the district court. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988). Thus, our task on review is to determine whether a genuine issue of material fact existed and whether the district court correctly applied the law when it invalidated Fort Collins's moratorium. In doing so, we review the district court's legal conclusions de novo. *See Webb v. City of Black Hawk*, 2013 CO 9, ¶ 16, 295 P.3d 480, 486; *see also Bd. of Cty. Comm'rs v. Colo. Oil & Gas Conservation Comm'n*, 81 P.3d 1119, 1124 (Colo.App.2003) (noting that the validity of a rule adopted by the Commission presents a question of law subject to de novo review).

¶ 10 We reject Fort Collins's argument that because courts must presume the validity of zoning decisions of municipal zoning authorities, *see Sellon v. City of Manitou Springs*, 745 P.2d 229, 232 (Colo.1987), the Association must prove beyond a reasonable doubt that the moratorium is preempted by state law. The question of preemption is a matter of law requiring us "to establish a priority between potentially conflicting laws enacted by various levels of government." *Bd. of Cty. Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1055 (Colo.1992). In this context, we perceive no basis for imposing a "beyond a reasonable doubt" standard on a party asserting preemption. *Cf. Blue Sky Entm't, Inc. v. Town of Gardiner*, 711 F.Supp. 678, 697 n. 19 (N.D.N.Y. 1989) (describing as "absurd" the application of the reasonable doubt standard to a question of law such as whether a town law was preempted by federal law); *United Air Lines, Inc. v. City & Cty. of Denver*, 973 P.2d 647, 655–59 (Colo.App.1998) (Briggs, J., specially concurring) (questioning the propriety of applying a "beyond a reasonable doubt" standard in the context of a challenge to the constitutionality of a municipal ordinance), *aff'd*, 992 P.2d 41 (Colo.2000).

## III. Analysis

¶ 11 We begin our analysis with an overview of Colorado preemption doctrine and

how that doctrine applies to home rule cities' ordinances, including moratoria, that regulate matters of mixed state and local concern. We then apply the doctrine to determine whether the Oil and Gas Conservation Act preempts Fort Collins's fracking moratorium.

## A. Preemption

¶ 12 The Colorado Constitution recognizes the sovereignty of home-rule cities by providing, in pertinent part:

> The people of each city or town of this state ... are hereby vested with, and they shall always have, power to make, amend, add to or replace the charter of said city or town, which shall be its organic law and extend to all its local and municipal matters.
>
> *Such charter and the ordinances, made pursuant thereto in such matters shall supersede within the territorial limits and other jurisdiction of said city or town any law of the state in conflict therewith.*

Colo. Const. art. XX, § 6 (emphasis added).

¶ 13 To ensure home-rule cities this constitutionally-guaranteed independence from state control in their internal affairs, we have consistently said that in matters of local concern, a home-rule ordinance supersedes a conflicting state statute. *See, e.g., Longmont*, ¶ 17; *Ryals v. City of Englewood*, 2016 CO 8, ¶ 12, 364 P.3d 900, 905.

¶ 14 In contrast, when a home-rule ordinance conflicts with state law in a matter of either statewide or mixed state and local concern, the state law supersedes that conflicting ordinance. *Longmont*, ¶ 18; *Ryals*, ¶ 12, 364 P.3d at 905; *Webb*, ¶ 16, 295 P.3d at 486. Accordingly, in matters of statewide concern, as well as in matters of mixed state and local concern, local ordinances may coexist with state statutes as long as the local ordinances do not conflict with the state statutes. *Longmont*, ¶ 18; *Voss v. Lundvall Bros., Inc.*, 830 P.2d 1061, 1066 (Colo.1992).

¶ 15 Thus, to decide the preemption question presented in this case, we must first determine whether Fort Collins's moratorium involves a matter of statewide, local, or mixed state and local concern. *See Longmont*, ¶ 19; *Ryals*, ¶ 12, 364 P.3d at 905.

This is a legal question. *See Longmont*, ¶ 19; *Ryals*, ¶ 12, 364 P.3d at 905.

¶ 16 As we have concluded today in *Longmont*, ¶ 31, a home-rule city's ordinance seeking to regulate fracking involves a matter of mixed state and local concern because it implicates the need for uniform statewide regulation and the extraterritorial impact of a fracking ban, on the one hand, and the local government's traditional authority to exercise its zoning authority over land where oil and gas development occurs, on the other. *See also Voss*, 830 P.2d at 1067–68 (discussing, in connection with the city of Greeley's total ban on drilling within the city limits, the four-factor test for determining whether a regulatory matter is one of statewide, local, or mixed state and local concern); *cf. Ryals*, ¶ 40, 364 P.3d at 909 (concluding that "the issue of sex offender residency implicates both state and local interests" and thus is an issue of mixed state and local concern).

¶ 17 When, as here, a home-rule city regulates a matter in which the state has an interest, the question of whether the local regulation is valid turns on whether it conflicts with state law. *See Longmont*, ¶ 32; *Ryals*, ¶ 12, 364 P.3d at 905; *Webb*, ¶ 16, 295 P.3d at 486. This is so because in such cases, state law preempts any conflicting local regulation. *See Longmont*, ¶ 32; *Ryals*, ¶ 12, 364 P.3d at 905; *Webb*, ¶ 16, 295 P.3d at 486; *see also Voss*, 830 P.2d at 1066 ("In matters of mixed local and state concern, a home-rule municipal ordinance may coexist with a state statute as long as there is no conflict between the ordinance and the statute, but in the event of a conflict, the state statute supersedes the conflicting provision of the ordinance.").

¶ 18 In the case of a home-rule ordinance that regulates a matter in which the state has an interest, such as fracking, state law may preempt the home-rule ordinance either expressly, impliedly, or because of an operational conflict. *Longmont*, ¶ 33. Whether an ordinance is expressly or impliedly preempted is primarily a question of statutory interpretation. *Id.*; *Colo. Mining Ass'n v. Bd. of Cty. Comm'rs*, 199 P.3d 718, 723 (Colo.2009).

¶ 19 A home-rule ordinance may be expressly preempted when the legislature clearly and unequivocally states its intent to prohibit a local government from exercising its authority over the subject matter at issue. *Longmont*, ¶ 34; *Bowen/Edwards*, 830 P.2d at 1057.

¶ 20 "Preemption may be implied when a state statute 'impliedly evinces a legislative intent to completely occupy a given field by reason of a dominant state interest.'" *Longmont*, ¶ 35 (quoting *Bowen/Edwards*, 830 P.2d at 1056–57). A legislative intent to preempt local control over certain activities cannot be inferred, however, merely from the enactment of a state statute addressing certain aspects of those activities. *Id.*; *Bowen/Edwards*, 830 P.2d at 1058; *City of Aurora v. Martin*, 181 Colo. 72, 507 P.2d 868, 870 (Colo.1973). Rather, we must consider the language used and the scope and purpose of the legislative scheme. *Longmont*, ¶ 35; *Bowen/Edwards*, 830 P.2d at 1058.

¶ 21 Finally, a state law may preempt a home-rule ordinance when the operational effect of that ordinance conflicts with the application of the state law. *Longmont*, ¶ 36; *Bowen/Edwards*, 830 P.2d at 1057. Preemption by reason of an operational conflict can arise when the effectuation of a local interest would materially impede or destroy a state interest. *Longmont*, ¶ 42; *Bowen/Edwards*, 830 P.2d at 1059. "Under such circumstances, local regulations may be partially or totally preempted to the extent that they conflict with the achievement of the state interest." *Bowen/Edwards*, 830 P.2d at 1059. As we explained in *Longmont*, ¶ 42, this operational conflict analysis requires us to assess the interplay between the state and local regulatory schemes. Accordingly, in virtually all cases, this analysis will involve a facial evaluation of the respective statutory and regulatory schemes, not a factual inquiry as to the effect of those schemes "on the ground." *Id.*

¶ 22 We now apply the foregoing principles to determine whether state law preempts Fort Collins's fracking moratorium.

## B. Application

¶ 23 The parties agree, as do we, that nothing in the Oil and Gas Conservation Act expressly preempts the moratorium.

¶ 24 In addition, we disagree with the Association's argument (and the district court's conclusion) that the Oil and Gas Conservation Act impliedly preempts Fort Collins's authority to regulate fracking and therefore, the moratorium. As we discussed in *Longmont*, ¶¶ 45–47, our prior cases have concluded that the Oil and Gas Conservation Act does not impliedly preempt a local government's authority to enact land-use regulations for oil and gas development and operations within the locality. *See, e.g., Bowen/Edwards*, 830 P.2d at 1059; *see also Voss*, 830 P.2d at 1066 ("[N]othing in the Oil and Gas Conservation Act manifests a legislative intent to expressly or impliedly preempt all aspects of a local government's land-use authority over land that might be subject to oil and gas development and operations within the boundaries of a local government."); *Town of Frederick v. N. Am. Res. Co.*, 60 P.3d 758, 763 (Colo.App.2002) (reaching the same conclusion based on the division's interpretation of the 1994 amendments to the Oil and Gas Conservation Act).

¶ 25 To the contrary, the General Assembly has recognized the propriety of local land-use ordinances that relate to oil and gas development. *See, e.g.*, Ch. 317, sec. 1, 1994 Colo. Sess. Laws 1978 ("[N]othing in this act shall be construed to affect the existing land use authority of local governmental entities."); Dep't of Nat. Res. Reg. 201, 2 Colo. Code Regs. 404–1 (2015) ("Nothing in these rules shall establish, alter, impair, or negate the authority of local and county governments to regulate land use related to oil and gas operations, so long as such local regulation is not in operational conflict with the Act or regulations promulgated thereunder.").

¶ 26 The question thus becomes whether the Oil and Gas Conservation Act preempts Fort Collins's moratorium because of an operational conflict.

¶ 27 The state's interest in oil and gas development is expressed in the Oil and Gas

Conservation Act and the rules and regulations promulgated thereunder by the Colorado Oil and Gas Conservation Commission (the Commission), which is the state agency tasked with administering the Act's provisions. *See* § 34–60–104.5(2)(a), C.R.S. (2015). The Act declares:

> It is the intent and purpose of this article to permit each oil and gas pool in Colorado to produce up to its maximum efficient rate of production, subject to the prevention of waste, consistent with the protection of public health, safety, and welfare, including protection of the environment and wildlife resources, and subject further to the enforcement and protection of the coequal and correlative rights of the owners and producers of a common source of oil and gas, so that each common owner and producer may obtain a just and equitable share of production therefrom.

§ 34–60–102(1)(b), C.R.S. (2015).

¶ 28 Pursuant to the Act, the Commission is empowered to make and enforce rules, regulations, and orders, § 34–60–105(1), C.R.S. (2015), and to regulate, among other things, the "drilling, producing, and plugging of wells and all other operations for the production of oil or gas," the "shooting and chemical treatment of wells," and the spacing of wells, § 34–60–106(2)(a)–(c), C.R.S. (2015).

¶ 29 Consistent with this legislative authorization, the Commission has promulgated an exhaustive set of rules and regulations "to prevent waste and to conserve oil and gas in the State of Colorado while protecting public health, safety, and welfare." Dep't of Nat. Res. Reg. 201, 2 Colo.Code Regs. 404–1 (2015). These rules and regulations comprehensively regulate the fracking process, from requirements that operators disclose substantial information about fracked wells and give notice of an intent to conduct fracking activities, *see* Dep't of Nat. Res. Regs. 205a, 305.c(1)(C)(iii), 308B, 316C.a, 2 Colo.Code Regs. 404–1 (2015), to a prohibition on certain production, special purpose, and flowback pits containing exploration and production waste within defined floodplains, *see* Dep't of Nat. Res. Reg. 603.h(2)(D), 2 Colo. Code Regs. 404–1 (2015). As we concluded in *Longmont*, ¶ 53, the Oil and Gas Conservation Act and the Commission's pervasive rules and regulations, which evince state control over numerous aspects of fracking, convince us that the state's interest in the efficient and responsible development of oil and gas resources includes a strong interest in the uniform regulation of fracking.

¶ 30 Like the ban on fracking that we invalidated in *Longmont*, ¶ 54, Fort Collins's fracking moratorium renders the state's statutory and regulatory scheme superfluous, at least for a lengthy period of time, because it prevents operators who abide by the Commission's rules and regulations from fracking until 2018. In doing so, the moratorium materially impedes the effectuation of the state's interest in the efficient and responsible development of oil and gas resources.

¶ 31 We are not persuaded otherwise by Fort Collins's contention that a five-year moratorium is sufficiently different from a perpetual ban that the former may be a valid exercise of zoning authority even if the latter constitutes a material impediment to the effectuation of the state's interest.

¶ 32 In support of its argument, Fort Collins asserts that (1) the fracking moratorium affects only a nonessential phase of production, i.e., fracking, and (2) the moratorium is a temporary "time-out" that allows Fort Collins to study the impact of fracking and waste disposal on public health.

¶ 33 As we observed in *Longmont*, ¶ 25, however, the availability of alternatives to fracking does not lessen the state's above-described interest in fracking. Nor do such alternatives alter the fact, found by the district court, that "virtually all oil and gas wells" in Colorado are fracked. Thus, even though it may be possible to produce oil and gas without fracking while the moratorium is in effect, the moratorium interferes with the many operators who have determined that fracking is necessary to ensure productive recovery. This, in turn, materially impedes the state's goal of permitting each oil and gas pool in Colorado to produce up to its maximum efficient rate of production, subject to the prevention of waste and consistent with the protection of public health, safety, and welfare. *See* § 34–60–102(1)(b); *cf. Long-*

*mont*, ¶ 23 (noting that the record before the court demonstrated that many operators had determined that fracking is necessary to ensure the productive recovery of oil and gas and that for these operators, banning fracking would result in less than optimal recovery and a corresponding waste of oil and gas).

¶ 34 Nor are we persuaded by Fort Collins's argument that the moratorium's purpose and limited duration save it from preemption. Fort Collins relies in part on *Williams v. City of Central*, 907 P.2d 701, 706 (Colo.App.1995), a regulatory takings case, to emphasize the importance of moratoria as interim measures that "are, by their very nature, of limited duration and are designed to maintain the status quo pending study and governmental decision making." Unlike the moratorium at issue in *Williams*, 907 P.2d at 703, however, which temporarily halted further development in Central City's new gaming district, Fort Collins's moratorium freezes a practice that, as discussed above, has come to be prevalent across the state. *See also Coastal Oil & Gas Corp. v. Garza Energy Tr.*, 268 S.W.3d 1, 7 (Tex.2008) ("First used commercially in 1949, frac[k]ing is now essential to economic production of oil and gas and commonly used throughout Texas, the United States, and the world."). Thus, rather than maintain the status quo, Fort Collins's moratorium substantially disrupts it.

¶ 35 Moreover, in contrast to the challenged moratorium in *Williams*, 907 P.2d at 703, which lasted only ten months, the fracking moratorium at issue here is for five years. We view such a lengthy moratorium as different in kind from a brief moratorium that is truly a "temporary time-out."

¶ 36 In our view, *Claridge House One, Inc. v. Borough of Verona*, 490 F.Supp. 706, 713 (D.N.J.1980), *aff'd*, 633 F.2d 209 (3d Cir. 1980), is more closely on point than *Williams*. In *Claridge House One*, 490 F.Supp. at 713, the court concluded that state law preempted a one-year moratorium on the conversion of rental units into condominiums because (1) the moratorium "does not regulate, but forbids" and (2) the moratorium, "even if for one year," "deleteriously affected

what was intended to be a state-wide program of regulation" and stood in the way of the twin legislative goals of permitting while regulating. *Cf.* § 30–28–121, C.R.S. (2015) (allowing boards of county commissioners to adopt moratoria on certain construction activities but providing that such moratoria shall not exceed six months).

¶ 37 Here, like the moratorium in *Claridge House One*, Fort Collins's moratorium is not merely a regulation; it is a prohibition, and one that lasts for five years. Moreover, for the reasons set forth above, such a lengthy prohibition (1) deleteriously affects what is intended to be a state-wide program of regulation and (2) impedes the goals of the Oil and Gas Conservation Act set forth in section 34–60–102(1)(b), as well as the state's interest in fracking as reflected in the Act and the rules and regulations promulgated pursuant thereto.

¶ 38 Finally, we are unpersuaded by Fort Collins's argument that "the bare factual record" in this case precludes us from affirming the district court's grant of summary judgment for the Association. Fort Collins concedes that "[t]he relevant material facts in this case are undisputed." For the reasons discussed above, these material facts demonstrate that Fort Collins's moratorium materially impedes the effectuation of the state's interest in fracking as reflected in the Oil and Gas Conservation Act and the rules and regulations promulgated pursuant thereto.

¶ 39 Accordingly, we conclude that Fort Collins's five-year moratorium on fracking and the storage of fracking waste within the city operationally conflicts with the application of the Oil and Gas Conservation Act and the rules and regulations promulgated pursuant thereto. We therefore hold that the Act preempts Fort Collins's moratorium.

¶ 40 We express no view as to the propriety of a moratorium of materially shorter duration.

## IV. Conclusion

¶ 41 For these reasons, we affirm the order of the district court and remand this case

for further proceedings consistent with this opinion.