FIRST NATIONAL BANK OF SOUTHEAST DENVER, a national banking association, Plaintiff–Appellee,

v.

Ronald M. BLANDING, Defendant–Appellant.

No. 93CA1024.

Colorado Court of Appeals, Div. I.

Aug. 11, 1994.

Rehearing Denied Oct. 13, 1994.

Robinson, Waters, O'Dorisio and Rapson, P.C., Peter A. Robinson, Martha J. Bohling, Denver, for plaintiff-appellee.

Roos, Cohen & Long, P.C., Alvin M. Cohen, Ira M. Long, Jr., Denver, for defendant-appellant.

Opinion by Judge METZGER.

In this action to recover a deficiency judgment following a series of real property foreclosures, defendant, Ronald M. Blanding, appeals the order of the trial court striking his claims for damages based upon the bid submitted by plaintiff, First National Bank of Southeast Denver (the Bank), in one foreclosure sale. We affirm.

In July of 1986, the Bank loaned Blanding $2,400,000 evidenced by a promissory note (the principal note) and secured by a deed of trust against certain real property located in Arapahoe County. The note was subsequently modified to include, *inter alia,* an additional deed of trust securing repayment recorded against described real property in Denver (the Broadway property).

The parties thereafter negotiated an additional $300,000 loan (the interest note) which essentially served as a line of credit to service the interest accruing upon the principal note. The interest note was secured by two deeds of trust against two additional parcels referred to hereinafter as the Carr property and the Wadsworth property. The Carr and Wadsworth deeds of trust also secured repayment of the principal note; thus the principal note was secured by all four properties, while only the Carr and Wadsworth properties secured repayment of the interest note.

Blanding subsequently defaulted, and the Bank commenced serial foreclosure proceedings against the properties. On January 23, 1991, the Bank submitted a deficiency bid at the sale of the Arapahoe property, leaving a deficiency balance of some $1,800,000. At the sale of the Carr property on January 25, the Bank calculated the amounts due upon the principal and interest notes and again submitted a deficiency bid, resulting in a deficiency balance of approximately $1,445,-000. On the same day, the Bank transferred the Carr deficiency to the balance due

against the Wadsworth property, and submitted a bid leaving a deficiency balance of about $990,000 owing under the principal note. The Broadway sale occurred on February 20, 1991. The Bank claimed the deficiency remaining after sale of the Wadsworth property, and made a bid resulting in a final deficiency balance of some $600,000. Apparently the Bank subsequently acquired title to all four properties.

The Bank thereafter brought an action upon the deficiency. Blanding asserted as an affirmative defense that the Bank had made unconscionably low bids at the foreclosure sales, and Blanding by counterclaim further sought damages attributable to the Bank's alleged bad faith bids and commensurate breach of the Bank's implied contractual promise to act in good faith.

Prior to a jury trial, the court granted the Bank's motion to strike Blanding's claims for affirmative relief based upon the Bank's alleged unconscionable foreclosure bids. At trial, the jury found the Bank's bid on the Carr property was not a good faith estimate of the property's fair market value and additionally awarded Blanding nominal damages upon a remaining counterclaim. In accordance with the instructions it received, the jury found the Bank's deficiency claim completely barred by the Bank's failure to make a good faith bid, and found by special interrogatory the fair market value of the Carr property to be $1,700,000 on the date of sale. The court entered judgment upon the verdicts.

■ Blanding argues the trial court erred in dismissing his claim for damages attributable to the Bank's bad faith bid. Blanding asserts he is entitled to recover damages since the Bank's bid submitted at the Carr property sale operated to extinguish the debt. Blanding further contends that damages should be allowed for the Bank's breach of an implied duty of good faith dealing. We do not agree.

Both parties rely upon § 38–38–106(1), C.R.S. (1993 Cum.Supp.), which provides in pertinent part:

The owner of such evidence of debt shall bid at least such owner's good faith esti-

mate of the fair market value of the property being sold (less the amount of unpaid real property taxes and all amounts secured by liens against the property being sold which are senior to the lien being foreclosed and less the estimated reasonable costs and expenses, net of income, of holding, marketing, and selling such property); except that such owner need not bid more than the amount due under such evidence of debt as itemized on the written bid pursuant to subsection (2) of this section. The failure of the owner of such evidence of debt to bid at least such owner's good faith estimate of the fair market value of the property being sold shall not affect the validity of such foreclosure sale but may be raised as a defense by any person sued on a deficiency.

Blanding essentially construes the statutory language to mean that the Bank's bad faith bid on the Carr property operated to discharge and relieve him from any further obligation or debt whatsoever owed to the Bank. He argues the bad faith bid thus rendered the later two sales wrongful and asserts that the market value of those properties is the measure of damages owed to him. In our view, this analysis is contrary to the plain meaning of the statute.

■ A lender is not required to submit a bid representing more than the total amount due as calculated and itemized according to the statute. Section 38–38–106(1). Consequently, at least at a foreclosure under powers through the public trustee affording the debtor the benefit of redemption, a lender need not bid the fair market value of the property insofar as that value exceeds the amount of the balance of the secured debt. *See Hawthorne v. Assured Premiums Corp.*, 472 P.2d 715 (Colo.App.1970) (not selected for official publication).

■ If the lender submits a deficiency bid, then an action for the difference between the mortgage debt and the amount bid can be brought. That difference fixes the amount of the debtor's personal liability. *See, e.g., United Bank v. One Center Joint Venture*, 773 P.2d 637 (Colo.App.1989). However, if the deficiency bid is less than the actual or

fair market value of the property and if that value is *less* than the amount due to the lender under the note, then, pursuant to § 38–38–106(1), a finding that the deficiency bid did not constitute a good faith estimate of the actual or fair market value of the property at the time of sale may be raised as a defense by the debtor in a lender's action upon the deficiency. In such a case, the foreclosure sale is not invalidated. Instead, the debtor's deficiency liability is to be adjusted to reflect what the deficiency should have been had a good faith, fair market value bid been made at the time of sale. *Bank of America v. Kosovich*, 878 P.2d 65 (Colo.App. 1994).

Here, since all four properties secured the principal note, the *seriatim* foreclosures were proper. The proceeds of sale and the realized deficiencies were properly apportioned among the properties which secured both the principal and interest notes. *See Loveland v. Clark*, 11 Colo. 265, 18 P. 544 (1888). This being the case, the final deficiency occurred as the result of four foreclosures upon essentially a single debt, the interest note having been discharged after the third sale. Consequently, the Bank's failure to submit a good faith bid at the Carr property sale did not invalidate or render the later two sales wrongful. Rather, the lack of a good faith bid should only be considered as an adjustment to the deficiency sued upon, to the extent that such a bid caused Blanding damage.

To grant Blanding the relief he now seeks would not only discharge the mortgage debt, but would return to him the monetary value of the Wadsworth and Broadway properties without requiring that he exercise his redemptive rights. Under the theoretical and agreed posture of this action, Blanding could have received a substantial windfall if the jury had found the Carr property to be worth only a few dollars more than the amount bid, since the bid, if not made in good faith, would have relieved Blanding by agreement of the parties from the remainder of the mortgage debt. Such outcome is obviously not an intended result of the statute.

We reject Blanding's claim that he is entitled to damages based upon the Bank's implied duty to deal and act in good faith. Even if we assume that that, or some other, remedy may exist under appropriate circumstances, here, a full adjustment of the deficiency has occurred and the record does not support an award of additional damages.

Judgment affirmed.

RULAND and ROY, JJ., concur.