**DENNER ENTERPRISES, INC., d/b/a Ditch Witch of the Rockies, Inc., a Colorado corporation, Plaintiff–Appellant and Cross–Appellee,**

v.

**BARONE, INC., a Colorado corporation, Defendant–Appellee and Cross–Appellant.**

**No. 02CA1429.**

Colorado Court of Appeals, Div. IV.

Feb. 12, 2004.

Dailey & Jacobs, PC, John L. Dailey, Denver, Colorado; Alice Elizabeth Marris, Highlands Ranch, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Davis & Ceriani, P.C., Rick G. Davis, Patrick J. Kanouff, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge KAPELKE.

In this action for relief under the Colorado Farm Equipment Fair Dealership Act (Act), § 35–38–101, et seq., C.R.S.2003, plaintiff, Denner Enterprises, Inc., appeals the judgment of the trial court dismissing its claims against defendant, Barone, Inc., and awarding Barone attorney fees. By cross-appeal, Barone challenges the amount of fees awarded. We affirm and remand with directions.

In December 1997, Denner and Barone entered into a written distributor agreement for the sale of SpoilVac systems, which are used to vacuum slurry from newly dug trenches. The agreement was for a one-year term with an option to renew, upon mutual assent and in writing, sixty days prior to the end of each term. Under the agreement, Denner was required to purchase a minimum of six SpoilVac units a year.

Although the parties did not formally renew or extend the agreement in writing at the end of the one-year term, Denner continued to purchase units from Barone for an additional two years and eight months.

On August 22, 2000, however, Barone wrote a letter to Denner advising that it had decided to sell its units directly to the public and, therefore, to terminate its dealer agreements.

In a letter to Denner of August 30, 2000, Barone stated, "[W]e hereby exercise our right to terminate." The letter indicated, however, that "in appreciation of [the parties'] past working relationship," for a ninety-day period only, Denner would be allowed to sell "new, unused units now in dealer inventory," and Barone would honor orders from Denner at a special price rate and discount structure. The pricing and discount structure allowed Denner to purchase units at a favorable rate and receive monetary credits for units it held in inventory before the new pricing structure was implemented. On November 15, 2000, Denner ordered two units (# 766 and # 768) under the new pricing structure.

In a letter to Denner of November 29, 2000, Barone stated, "[W]e would like to offer to you the opportunity to continue to represent SpoilVac in your area for as long as is mutually agreeable and beneficial." On January 23, 2001, Denner purchased a unit (# 763) for immediate delivery, at the same price it had paid for units # 766 and # 768.

In October 2001, Denner became aware that Barone was selling units directly to the public at the same prices it was charging Denner for identical units. On November 6, 2001, Denner informed Barone that it was terminating their distributor agreement and requested, under the Act, that Barone repurchase four units remaining in Denner's inventory (# 763, # 766, # 768, and # 599). Barone refused to repurchase the units, and Denner thereafter commenced this action.

At the close of Denner's case-in-chief, the court granted Barone's motion for dismissal. The court found that Barone had terminated the distributor agreement no later than August 30, 2000 and that the parties had not renewed the agreement or entered into a new agreement. The court also found that, because units # 763, # 766, and # 768 were purchased after the termination and not pursuant to any requirement of the agreement, the repurchase obligation provision of the Act did not apply. Further, the court determined that Barone was not required to repurchase unit # 599 because it had been leased by Denner to another company.

## I.

■ Denner contends that the trial court erred in determining that the distributor agreement was terminated as of August 30, 2000. Specifically, Denner asserts that a "dealer agreement," as defined in the Act, was in effect at all relevant times. We perceive no basis for reversal.

Under the Act, a dealer agreement is a written or oral contract that "prescribes the rights and obligations of each party with respect to the purchase or sale of equipment." Section 35–38–102(1), C.R.S.2003.

Upon the cancellation or nonrenewal of a dealer agreement by either party, § 35–38–106(1), C.R.S.2003, of the Act requires the supplier to "repurchase the dealer's remaining inventory and any specific data processing hardware and software that the supplier required the dealer to purchase."

However, the supplier is not obligated to repurchase inventory "that the dealer ordered on or after the date the dealer received the notification of the supplier's termination of the dealer agreement." Section 35–38–106(6)(i), C.R.S.2003.

■ We may set aside the trial court's findings of fact only if they are clearly erroneous. *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.,* 965 P.2d 105, 110 (Colo.1998). Unless the court's factual findings are unsupported by competent evidence in the record, we will defer both to the findings themselves and to any reasonable inferences or conclusions that the trial court draws from the evidence. *Assocs. of San Lazaro v. San Lazaro Park Props.,* 864 P.2d 111, 115 (Colo. 1993); *Lacy v. Rotating Prods. Sys., Inc.,* 961 P.2d 1144, 1146 (Colo.App.1998). Further, we must give deference to the trial court's findings regarding whether a contract exists, even where the evidence is conflicting or admits of more than one inference. *Harlan C. Stientjes, P.C. v. Olde–Cumberlin Auctioneers, Inc.,* 754 P.2d 1384, 1385 (Colo. App.1988).

Competent evidence in the record supports the trial court's findings that the agreement had terminated before Denner ordered units # 763, # 766, and # 768. In the August 30, 2000 letter, Barone stated, "[W]e hereby exercise our right to terminate." Also, one of Denner's witnesses testified that Denner understood from the August 22, 2000 letter that Barone would no longer be using dealers, including Denner, to sell the units.

In addition, there is record support for the court's finding that the November 29, 2000 letter did not reinstate the prior agreement or create a new one. The letter can be interpreted as simply an invitation to negotiate, as shown by the following language: "You ... have expressed an interest in continuing your relationship with us. We agree and would like to continue working with you." Further, a witness called by Denner testified that Denner understood the November 29, 2000 letter to represent Barone's intention not to create a new agreement, but, instead, merely to allow Denner to continue to purchase equipment. Because the November 29, 2000 letter does not discuss either the rights or obligations of the parties as required under the Act's definition of a dealer agreement, the trial court properly found that no dealer agreement existed when Denner ordered the units at issue. Thus, the trial court correctly concluded that the Act's repurchase provision did not apply to units # 763, # 766, and # 768.

■ Further, there is competent record support for the trial court's conclusion that the repurchase obligation of the Act was inapplicable to unit # 599. Under § 35–38–106(6)(f), C.R.S.2003, a supplier is not required to repurchase equipment that is "not in new, unused, undamaged, and complete condition." The record shows that unit # 599 had been leased by Denner to a contracting company between September 2000 and January 2001.

In light of our holding, we need not address Denner's contention that the court erred in interpreting the supplier's repurchase obligation under § 35–38–106(1) to apply only to inventory the dealer was contractually required to purchase. We also need not determine whether the units constituted "earthmoving equipment" and were therefore excluded from the Act, an issue not decided in the trial court.

## II.

■ We reject Denner's contention that the trial court erred in awarding attorney fees to Barone.

Denner first argues that the award was not authorized by any statute, court rule, or contract. We disagree.

■ A prevailing party may be entitled to attorney fees when its request is pursuant to a controlling statute, court rule, or private contract. *Agritrack, Inc. v. DeJohn House-moving, Inc.*, 25 P.3d 1187, 1191 (Colo.2001).

The court awarded Barone attorney fees pursuant to the following provision of the distributor agreement: "In the event legal proceedings are instituted in connection with this Agreement, the prevailing party shall recover its reasonable costs and attorneys' fees." Furthermore, the contract contains a survival clause, providing for the continuation of rights and obligations beyond the termination of the agreement.

However, Denner argues that the attorney fees provision of the distributor agreement does not apply because the legal proceedings were not instituted "in connection with" that agreement, but, instead, in relation to claims under the Act. We reject the argument. In its own complaint and throughout the litigation, Denner took the position that its rights stemmed from there having been a distributor agreement with Barone before the termination. Indeed, in its complaint Denner also sought an award of attorney fees pursuant to the fees provision of the agreement. Under these circumstances, we agree with the trial court that the action was instituted "in connection with" the distributor agreement and that Barone was thus entitled to recover attorney fees.

■ We also reject Denner's assertion that awarding attorney fees to Barone violates the general purpose of the Act, which is to provide protection to equipment dealers. Denner relies on § 35–38–109(1), C.R.S.2003, which states: "An equipment dealer may bring an action against a supplier ... for damages sustained by the dealer as a consequence of the supplier's violation of the provisions of this article. The *dealer* may also

recover costs and reasonable attorney fees" (emphasis added).

■ As a general rule, "[i]n the absence of countervailing public policy or an express statutory provision barring waiver, parties may enter into contracts extinguishing or limiting statutory provisions which confer a right or benefit on one or both parties." *Bank of Am. Nat'l Trust & Sav. Ass'n v. Denver Hotel Ass'n Ltd. P'ship*, 830 P.2d 1138, 1139 (Colo.App.1992); *see Martinez v. Cont'l Enters.*, 730 P.2d 308 (Colo.1986).

Here, the agreement does not extinguish, limit, or purport to waive Denner's own right as a dealer to an award of attorney fees under § 35–38–109(1). Instead, the contract reflects the parties' intent that in actions in connection with the agreement, whichever party prevailed would be entitled to an award. Therefore, here, we are not asked to protect the interests of a statutorily protected party who contracted *contrary to the statute. See* 8 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* §§ 19:56 & 19:57 (4th ed.1998).

Further, the Act contains no language disallowing the award of attorney fees to suppliers. To the contrary, § 35–38–109(3), C.R.S. 2003, states, "The remedies provided by this section are in addition to any other remedies permitted by law...."

Moreover, the mere fact that the Act expressly authorizes an award of fees to dealers does not, in our view, manifest a public policy that would preclude a dealer and a supplier from contracting for an award of fees to whichever party prevails in an action relating to their agreement.

■ As the supreme court has stated: "The power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." *Chicago, B. & Q.R. Co. v. Provolt*, 42 Colo. 103, 112, 93 P. 1126, 1128 (1908) (quoting *Greenhood on Public Policy* 116–17).

We conclude that enforcement of the contractual fees provision here does not violate

any sound public policy or the purpose of the Act.

Denner has not argued or suggested that Barone was in an unfairly superior bargaining position or in any way overreached in bargaining for the fees provision, such that its enforcement would be unconscionable.

Accordingly, we conclude that the trial court did not err in awarding Barone attorney fees.

## III.

Finally, Barone contends on cross-appeal that the trial court abused its discretion by not awarding the additional attorney fees incurred after Barone filed its motion for attorney fees. We conclude that a remand is necessary.

A trial court has broad discretion in determining the amount of attorney fees to be awarded. *Tait v. Hartford Underwriters Ins. Co.*, 49 P.3d 337, 343 (Colo.App.2001).

Here, Barone did not file a separate motion for the additional attorney fees, but, instead, requested them only in its reply in support of its motion for attorney fees. We are unable to ascertain from the record whether the court intended to deny the request or merely overlooked it.

Barone has also requested an award of its fees incurred in defending this appeal. That request is also based on the fees provision of the agreement and must be considered on remand.

The judgment is affirmed, and the case is remanded for an award of Barone's attorney fees incurred on appeal and for consideration and determination of Barone's additional fee request made in the trial court.

Judge VOGT and Judge WEBB concur.