2014 COA 74
**ARMED FORCES BANK, N.A., as successor to Bank Midwest, N.A., Plaintiff–Appellee,**

v.

**David W. HICKS and Connie F. Hicks, Defendants–Appellants.**

Court of Appeals No. 13CA0875

Colorado Court of Appeals,
Div. VI.

Announced June 5, 2014

---

* Sitting by assignment of the Chief Justice under provisions of Colo.. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. 2013.

Garfield County District Court No. 10CV181, Honorable Daniel B. Petre, Judge

Markus Williams Young & Zimmermann LLC, Steven R. Rider, Thomas J. Bissell, Devi C. Yorty, Denver, Colorado, for Plaintiff–Appellee

Bieging Shapiro & Barber LLP, Duncan E. Barber, Steven T. Mulligan, Denver, Colorado, for Defendants–Appellants

Opinion by JUDGE RICHMAN

¶1 Defendants, David W. Hicks and Connie F. Hicks, appeal the summary judgment granted in favor of plaintiff, Armed Forces Bank, and the denial of their motions to amend their answer and to compel production of documents. We affirm.

## I. Background

¶2 In December 2006, Glenwood Commercial, LLC, borrowed $6 million from Bank Midwest to build a condominium complex in Glenwood Springs. The loan was secured by a deed of trust on the property where the complex was to be built. The Hickses, who were principals of Glenwood Commercial, provided separate but identical personal guaranties for the loan. Bank Midwest as-signed the loan and guaranties to Armed Forces Bank (Bank Midwest and Armed Forced Bank are hereafter referred to collectively as "the bank").

¶3 Pursuant to two loan modification agreements, the principal amount of the loan was increased and the maturity date was set for June 2009. When the loan matured, the Hickses and Glenwood Commercial entered into a forbearance agreement with the bank, pursuant to which the bank agreed to refrain from exercising its then-existing default remedies until October 2009.

¶4 Before then, the loan was modified again. The third modification agreement reaffirmed the continuing validity of the guaranties, and the third modification of the promissory note extended the maturity date of the loan to December 21, 2009, with the possibility of further extensions; specified the balance due on the loan was $7, 552, 500; and contained a clause stating that the borrower would be in default if it failed:

> to have finally approved by the City of Glenwood Springs or Garfield[ ] County, Colorado, as necessary, and filed of record no later than January 1, 2010, a condominium plat and related condominium declaration for the four commercial properties known as "Glenwood Commercial," Glenwood Springs, Colorado, on the real property described in the Construction Deed of Trust recorded at Reception No. 713718 of the records of Garfield County, Colorado.

¶5 The loan was still unpaid on December 21, 2009, and the condominium plat had not been approved by the bank or filed with the County by January 1, 2010.

¶6 In June 2010, the bank filed suit against Glenwood Commercial and the Hickses, seeking appointment of a receiver, money damages against Glenwood Commercial for breach of the note, and performance by the Hickses under their guaranty agreements. A receiver was appointed, but in July 2010, Glenwood Commercial filed for bankruptcy, resulting in a stay of those proceedings. The Hickses filed their answer to the complaint in December 2010, denying liability and asserting as affirmative defenses estoppel, waiver, and failure to mitigate.

¶ 7 In August 2011, the bank moved in the bankruptcy proceeding to lift the stay to allow it to pursue foreclosure of the property. The bankruptcy court granted the motion and thereafter dismissed the bankruptcy proceeding. Subsequently, Glenwood Commercial was dismissed from this action.

¶ 8 The bank proceeded with the foreclosure and the civil action against the Hickses. A foreclosure sale was set for March 2012, and the case was set for trial in August 2012. However, in January 2012, the bank moved for summary judgment, arguing that the Hickses were liable for the entire unpaid balance under their unconditional guaranties of the loan.

¶ 9 The Hickses admitted that they had guaranteed the note and that the note was in default, but they argued that the bank was estopped from claiming a default because the bank could have lessened or eliminated the Hickses' liability. They argued that even though the January 1, 2010, filing deadline had passed, the bank could have approved the condominium plat on a later date, allowing it to be filed with the county thereafter, and thus permitting the property to be leased. Leasing the property, they argued, would have raised its value, leading to either a reduction or the elimination of any deficiency for which they were responsible under the guaranties. The Hickses also argued that the bank was estopped from claiming a default because it had violated the covenant of good faith and fair dealing when it had refused to approve the plat. In addition, the Hickses argued that the bank failed to mitigate its damages by refusing to approve the plat.

¶ 10 Along with their opposition to the summary judgment motion, the Hickses filed a motion to amend their answer to assert a counterclaim for the bank's alleged breach of the duty of good faith and fair dealing by not approving the plat, even after the January 1, 2010, deadline had passed, which in turn reduced the value of the property.

¶ 11 The bank responded that the refusal to approve the plat after January 1, 2010, could not amount to a breach of the duty of good faith because, by that time, Glenwood Commercial had already defaulted on the third loan modification agreement by failing to submit payment by December 21, 2009, and by failing to submit the plat for filing with the county or for the bank's approval by January 1, 2010, and the civil suit had already been filed. The bank also argued that the Hickses had waived all of their other defenses, aside from payment and performance, in their guaranty agreements.

¶ 12 In March 2012, the bank submitted a successful bid of $3,705,000 for the property at the foreclosure sale. Defendants later claimed this bid was unreasonable because it was nearly $1 million less than an appraised value of the property made on a "leased fee basis." At the time of the sale, the accrued interest, attorney fees, and other expenses totaled approximately $9.8 million. After the sale of the property, the deficiency for which the Hickses were liable was approximately $6.1 million.

¶ 13 Following the sale, the Hickses supplemented their opposition to the summary judgment motion, arguing that in violation of section 38–38–106(6), C.R.S.2013, the bank bid less than its good faith estimate of the property's fair market value at the foreclosure. The statute sets forth procedures for conducting foreclosure sales and provides, in pertinent part:

> The holder of the evidence of debt or the attorney for the holder shall bid at least the holder's good faith estimate of the fair market value of the property being sold. . . . The failure of the holder to bid the amount required by this subsection (6) shall not affect the validity of the sale but may be raised as a defense by any person sued on a deficiency.

The Hickses argued that (1) compliance with this provision was mandatory; (2) the protections of this statute could not be contractually waived in advance; and (3) public policy precluded waiver of this defense in their guaranties.

¶ 14 The bank objected to the supplement, contending that it had bid its good faith estimate of the fair market value of the property. The bank also argued that any good faith defense provided by section 38–38–106(6) had been waived by the language

in the Hickses' guaranties, which states: "Guarantor also waives ... any rights and defenses arising by reason of (A) ... 'anti-deficiency law' ... or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness." These documents also declare: "Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both." The bank further contended that no public policy exists to prevent waiver of the provisions in section 38–38–106(6).

¶ 15 In July 2012, the Hickses moved under C.R.C.P. 37 to compel the production of documents relating to efforts to lease the property, arguing that under C.R.C.P. 26, such documents should have been disclosed by the bank. The district court denied the motion on the grounds that the Hickses never served a request for the documents under C.R.C.P. 34 and the documents were not subject to disclosure under C.R.C.P. 26(a)(1)(B).

¶ 16 On August 2, 2012, the district court granted the bank's motion for summary judgment, finding that the Hickses had not raised any genuine issue of material fact because (1) the defense in section 38–38–106(6) was waivable; (2) the Hickses had waived it in their guarantees; and (3) no public policy barred waiver of the defense.[1] The district court rejected the other arguments made by the Hickses.

¶ 17 The district court also denied the Hickses' motion to amend their answer to assert a counterclaim, reasoning that the motion was futile because the bank was not required to approve the plat after the contractual deadline for approving it had passed.

¶ 18 The Hickses appeal all three rulings.

## II. Discussion

### A. Summary Judgment

¶ 19 The Hickses contend that the district court erred as a matter of law because the bank's statutory obligations under section 38–38–106(6) could not be waived, and that, in any event, the Hickses' guaranty documents do not contain a waiver of the bank's statutory obligations under section 38–38–106(6). We reject both propositions.

### 1. Standard of Review

¶ 20 We review de novo a district court's grant of summary judgment because it is a question of law. *Ryder v. Mitchell*, 54 P.3d 885 (Colo.2002). Summary judgment is appropriate when the pleadings and supporting documents demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215 (Colo. 2002). In deciding whether summary judgment is appropriate, the court must view the facts in the light most favorable to the nonmoving party. *Colo. Civil Rights Comm'n v. N. Washington Fire Prot. Dist.*, 772 P.2d 70, 74–75 (Colo.1989).

¶ 21 On appeal, the Hickses do not argue that disputed facts precluded the entry of summary judgment, but rather that the district court erred as a matter of law in concluding that the protections of section 38–38–106(6) may be waived, and that the language of their guaranties constitutes such a waiver. The district court did not determine, and we do not consider, whether the bank's bid at the foreclosure sale satisfied the requirement of a good faith estimate of the property's fair market value.

### 2. Waivability of Section 38–38–106(6)

¶ 22 As noted above, section 38–38–106(6) requires that in any bid by the mortgage holder at a foreclosure sale, the "holder shall bid at least the holder's good faith estimate of the fair market value of the property being sold." The ostensible purpose of the requirement is to protect debtors and guarantors from artificially low bids at foreclosure, resulting in a larger deficiency

1. Although the loan documents contain a choice of law provision referencing Missouri law, the parties and the trial court relied on Colorado law as it pertains to the applicability of the statute.

claim against them and a windfall to the lender.

¶ 23 Under common law, our supreme court has held that a foreclosure bid "not made in good faith on the basis of what the security could reasonably be expected to produce on sale at its fair market price" invalidated the foreclosure sale. *Chew v. Acacia Mut. Life Ins. Co.*, 165 Colo. 43, 53, 437 P.2d 339, 343 (1968). However, section 38–38–106(6) expressly provides that "[t]he failure of the holder to bid the amount required by this subsection (6) shall not affect the validity of the sale," and a division of this court has held that the statute does not allow for setting aside the foreclosure sale. *See Bank of Am. v. Kosovich*, 878 P.2d 65, 67 (Colo.App. 1994).

■ ¶ 24 Instead, the statute provides that the failure of the holder to bid the good faith estimate of the fair market value "may be raised as a defense by any person sued on a deficiency." § 38–38–106(6). As the *Kosovich* division held, "if the defaulting party proves that the sale was unfair because the foreclosing party did not meet the good faith requirement, then the amount of deficiency is a question of fact to be determined by the jury." 878 P.2d at 67. The debtor's resulting deficiency liability is to be adjusted to reflect what the deficiency should have been had a good faith, fair market value bid been made at the time of sale. *First Nat'l Bank of Se. Denver v. Blanding*, 885 P.2d 324, 327 (Colo.App.1994).

¶ 25 In interpreting a statute, courts must give effect to the legislative intent. *Klinger v. Adams Cnty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031, 130 P.3d 1027, 1031 (Colo.2006); *DISH Network Corp. v. Altomari*, 224 P.3d 362, 365 (Colo.App.2009). To effect legislative intent, courts must first look to the statute's language and construe words and phrases according to their common usage. *Klinger*, 130 P.3d at 1031; *DISH Network*, 224 P.3d at 366–67. When the language is clear and unambiguous, courts need not resort to other rules of statutory construction.

*Klinger*, 130 P.3d at 1031; *DISH Network*, 224 P.3d at 367.

■ ¶ 26 Based on the unambiguous language of this statute, specifically the phrase stating that the low bid "may be raised as a defense," we conclude that its plain meaning is to provide debtors with a defense that they may assert, but which they also may waive. When the word "may" is used in a statute, it denotes a grant of discretion and is usually permissive. *Cagle v. Mathers Family Trust*, 295 P.3d 460, 467 (Colo.2013) ("The phrase 'may sue' is permissive, not mandatory....").

¶ 27 To be sure, the structure of the statute suggests that a waiver occurs if the debtor fails to assert the low bid as an affirmative defense when sued for a deficiency on the loan.[2] Still, under the circumstances of this case, we see no reason that prevents the defense from being waived in a written guaranty negotiated at the time of the origination of the loan and the giving of a security interest, and renewed when the loan was renegotiated on at least three occasions. This is particularly true when, as in this case, the parties are commercial real estate developers, and they do not contend that the guaranty is invalid or otherwise unenforceable on other grounds.

■ ¶ 28 In the absence of an express statutory provision barring waiver or a countervailing public policy, parties may enter into contracts extinguishing or limiting statutory provisions that confer a right or a benefit to one or both parties. *Martinez v. Cont'l Divide Ins. Co.*, 730 P.2d 308, 316 (Colo. 1986); *Denner Enters., Inc. v. Barone, Inc.*, 87 P.3d 269, 273 (Colo.App.2004). We note that section 38–38–703, C.R.S.2013, for example, contains an express prohibition against the waiver of the protections of that statute in foreclosure proceedings, whereas section 38–38–106(6) contains no similar prohibition against waiver. Both statutes were enacted at the same time, and because the General Assembly could have included an express prohibition against waiver of the protections of section 38–38–106(6), presumably it chose

---

2. We note the Hickses did not assert this statute as an affirmative defense, and it is not raised in their motion to amend. Nonetheless, because the district court addressed their argument below, and the bank responds to it on appeal, we consider the Hickses' statutory argument.

not to. *See* Ch. 305, sec. 12, § 38–38–106, 2006 Colo. Sess. Laws 1452; Ch. 305, sec. 32, § 38–38–703, 2006 Colo. Sess. Laws 1478.

¶ 29 Nor do we conclude that the ability to waive the provisions of section 38–38–106(6) would violate public policy. The power of courts to declare a contract void for being in violation of public policy "is a very delicate and undefined power" and, like the power to declare a statute unconstitutional, should be exercised "only in cases free from doubt." *Chicago, B. & Q.R. Co. v. Provolt*, 42 Colo. 103, 112, 93 P. 1126, 1128 (1908) (internal quotation marks omitted). Public policy may override contract provisions when one party is in an unfairly superior bargaining position or overreaches in bargaining for a fees provision, such that its enforcement would be unconscionable. *Denner Enters.*, 87 P.3d at 274. The Hickses have not suggested an absence of equal bargaining power or overreaching by the lender rendering the agreement unconscionable at the time it was made, nor did they allege that the bank's bid violated an implied duty of good faith.

¶ 30 The Hickses argue that we should reach a conclusion similar the one reached in an unpublished decision, *Federal Deposit Insurance Corp. v. Lichtenfels*, No. Civ. A. 91–A–2128, 1992 WL 227012, at *3 (D.Colo. Aug. 10, 1992), which denied a summary judgment for a bank which argued that the language of the guaranty waived the requirement of a good faith bid. We decline to do so for two reasons.

¶ 31 First, the waiver language of the guaranty at issue in *Lichtenfels* was not as broad as the language contained in the Hickses' guaranties, as it did not include a waiver of "any defenses at law or in equity." Nor did it expressly waive defenses based on anti-deficiency statutes.

¶ 32 Second, after concluding that the language of the *Lichtenfels'* guaranty did not amount to a waiver, the court supported its conclusion by stating that "[t]he requirement of a good faith bid at foreclosure, as set out by the Colorado Supreme Court in *Chew*, is not so readily waived" and that "no language in these documents can permit a lender to disregard Colorado statutory and case law." *Id.* We understand this language to

mean that the court concluded that the statutory and common law good faith requirement was not waived under the circumstances presented by that case, not that it never could be waived.

### 3. Effectiveness of Waiver

¶ 33 The Hickses argue that even if the defense in section 38–38–106(6) is waivable, their guaranty agreement did not waive it. We disagree.

¶ 34 We review de novo a trial court's interpretation of a contract. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). The primary goal of contract interpretation is to ascertain and give effect to the intent of the parties. *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo.2000). The intent of the parties to a contract is determined primarily from the language of the instrument itself. *Id.* In deciding whether provisions of the instrument are ambiguous, courts must construe the document's language in harmony with the plain and generally accepted meaning of the words employed. *Id.* Contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language. *See id.*

¶ 35 Terms used in a contract are ambiguous when they are susceptible of more than one reasonable interpretation. *Id.* Absent such ambiguity, courts will not look beyond the four corners of the contract in determining the meaning intended by the parties. *Id.* at 376–77.

¶ 36 The Hickses guaranties contain a section titled "Guarantor's Waivers," which provides:

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one" action or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any

foreclosure action, either judicially or by exercise of power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the indebtedness; (D) any right to claim discharge of the indebtedness on the basis of unjustified impairment of any collateral for the indebtedness ... or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness.

The guaranties also state: "Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both."

¶ 37 We conclude that the plain language of these provisions unambiguously waived all of the Hickses' defenses against the bank other than actual payment of the debt, and, therefore, the Hickses waived their defenses based on section 38–38–106(6) in their guaranty agreements.

¶ 38 The district court's order addressed additional arguments the Hickses made in opposition to summary judgment. Those arguments have not been raised on appeal, and we therefore deem them abandoned. *See People v. Dash*, 104 P.3d 286, 293 (Colo.App. 2004) (arguments raised in the trial court and not pursued on appeal are deemed abandoned). Thus, we conclude that the district court properly granted summary judgment in the bank's favor.

### B. Motion to Amend Answer

¶ 39 The Hickses contend that the district court erred by denying their motion to amend their answer to assert a counterclaim against the bank. We disagree.

¶ 40 The motion seeking leave to amend and the accompanying proposed amended answer set forth one counterclaim for breach of the covenant of good faith and fair dealing. The Hickses asserted only that the bank breached its duty of good faith and fair dealing "by failing and refusing to approve the Final Plat." According to the counterclaim, it was always contemplated by the parties that the development of the property would culminate in recordation of a plat; the loan documents required the approval of the plat by local authorities "no later than January 1, 2010"; failure to obtain approval of the plat was a default under the note; the plat was provided to the bank for approval on October 15, 2010; and the bank refused to approve the plat.

¶ 41 Leave to amend a pleading shall be given freely if justice so requires. C.R.C.P. 15(a). However, a court may deny leave to amend if the amendment would be futile. *Am. Civil Liberties Union v. Whitman*, 159 P.3d 707, 713 (Colo.App.2006). An amendment is futile if it could not withstand a motion to dismiss. *Id.*; *accord Benton v. Adams*, 56 P.3d 81, 85 (Colo.2002). We review de novo a trial court's determination that amendment would be futile because the amended complaint could not survive a motion to dismiss. *Benton*, 56 P.3d at 85.

¶ 42 The district court denied the motion to amend on the basis that the counterclaim as alleged was futile and would not survive a motion to dismiss. The court recognized that the duty of good faith and fair dealing is imposed on parties to a contract, yet it concluded that under Missouri law, the choice of law provided for in the loan documents, the bank did not violate its duties. Since the bank was presented with the proposed final plat after the January 1, 2010, deadline had passed, and after it had filed suit for breach of the note, it had the right to repudiate the modification and forbearance agreements and proceed with its contractual remedies. Citing *McKnight v. Midwest Eye Institute of Kansas City, Inc.*, 799 S.W.2d 909, 915 (Mo.Ct.App.1990), the district court

held that failure by one party to perform gives to the other party the right to repudiate the contract.

¶ 43 On appeal, the Hickses argue that the proposed amendment was not futile and that the district court erred in finding that they were required to obtain final approval of the plat by January 1, 2010. They point to language in the forbearance agreement setting forth additional covenants, one of which states:

> Borrower shall ... have delivered to Lender evidence, satisfactory to Lender that Borrower has received conditional final approval of the condominium plat and condominium declaration for the property (Borrower estimates receipt of the final unconditional approval thereof by January 1, 2010.).

They argue that the parenthetical language is aspirational, rather than a requirement of the transaction. However, this argument ignores the fact that the subsequent third modification of the promissory note contains an additional specific act of default, stating that a default will result if the borrower fails to have "finally approved" by the city or county "and filed of record no later than January 1, 2010, a condominium plat and related condominium declaration...."

¶ 44 We conclude that the district did not err in finding the filing of a final plat was a condition of performance, and that default had occurred as of January 1, 2010, when the plat had not been approved by local authorities and filed. As the district court correctly concluded, a material breach gives the other party to a contract the right to repudiate and sue for breach. Furthermore, the duty of good faith and fair dealing does not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions. *See Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.,* 872 P.2d 1359, 1363 (Colo.App.1994). Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement. *Id.* Thus, we agree with the district court that the proposed amendment would have been futile, and denial of the motion was proper.

### C. Motion to Compel Production of Documents

¶ 45 Finally, the Hickses argue that the district court abused its discretion by denying their motion to compel production of documents requiring the bank to produce documents pursuant to its obligations under C.R.C.P. 26(a)(1).

¶ 46 We review a district court's discovery ruling for an abuse of discretion. *Cardenas v. Jerath,* 180 P.3d 415, 421 (Colo.2008).

¶ 47 The Hickses aver that the documents sought consisted of emails between the bank, its broker, and the receiver regarding the leasing of the property to potential tenants. They suggest these documents could shed light on the alleged breach of the bank's duty of good faith because it deferred leasing the property until after foreclosure was completed.

¶ 48 The district court denied the motion because the Hickses had not requested such documents under C.R.C.P. 34 nor by any other discovery mechanism. Thus, relief under C.R.C.P. 37 was not available here.

¶ 49 The Hickses argued that the documents should have been produced as part of the bank's initial disclosures under C.R.C.P. 26(a)(1). The district court disagreed, noting that the disclosure requirement of C.R.C.P. 26(a)(1) applies only to documents relevant to disputed facts alleged with particularity. The court found that the pleadings did not encompass issues related to leasing; therefore, disclosure of the bank's file, to the extent it might have contained leasing documents, was not required under C.R.C.P. 26(a)(1).

¶ 50 We note that although the Hickses argued in a brief that the fair market value of the property was lessened because of the receiver's and the bank's lack of leasing activity, they never filed a claim alleging that the failure to lease the property constituted a

breach of the duty of good faith. The district court was correct in concluding that the pleadings did not encompass issues related to leasing.

¶ 51 Thus, we perceive no abuse of discretion in the district court's ruling and decline to reverse the order denying the motion to compel.

III.   Conclusion

¶ 52 The judgment is affirmed.

JUDGE ROMÁN and JUDGE BOORAS concur.