The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 13, 2020

## 2020COA27

## No. 18CA2345, *Stanczyk v. Poudre School Dist R-1* — Education — Teacher Employment, Compensation, and Dismissal — Nonprobationary Portability

A division of the court of appeals considers whether a school

district may restrict a teacher's right under section 22-63-203.5,

C.R.S. 2019, to transfer his or her nonprobationary status from one

school district to another, known as nonprobationary portability.

The division concludes that a school district may not impose

unreasonable restrictions on a teacher's exercise of the right to

nonprobationary portability.  If a teacher complies with the

statutory requirements for nonprobationary portability, the hiring

school district must grant the teacher nonprobationary status.  In

this case, the defendants' restrictions on a teacher's right to

exercise the right to nonprobationary portability were unreasonable

because they allowed defendants to decide unilaterally whether the teacher could obtain nonprobationary status.

Because the defendants unreasonably restricted the teacher's ability to exercise the statutory right to nonprobationary portability, the district court erred in awarding summary judgment in favor of the defendants. The division holds that the plaintiffs are entitled to summary judgment on their claim that the defendants' restrictions violated the teacher's right to nonprobationary portability and remands for further proceedings on the plaintiffs' remaining claims.

COLORADO COURT OF APPEALS                                    **2020COA27**

Court of Appeals No. 18CA2345
Larimer County District Court No. 17CV30480
Honorable Gregory M. Lammons, Judge

Patricia Stanczyk and Poudre Education Association,

Plaintiffs-Appellants,

v.

Poudre School District R-1 and Poudre School District R-1 Board of Education,

Defendants-Appellees.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE LIPINSKY
Webb and Dunn, JJ., concur

Announced February 13, 2020

Brooke Copass, Rory Herington, Charles Kaiser, Denver, Colorado, for
Plaintiffs-Appellants

Semple, Farrington, Everall, & Case, P.C., M. Brent Case, Jonathan Fero, Mary
Barham Gray, Denver, Colorado, for Defendants-Appellees

Philip J. Weiser, Attorney General, Julie C. Tolleson, First Assistant Attorney
General, Jenna Zerylnick, Assistant Attorney General, Denver, Colorado, for
Amicus Curiae Patricia Stanczyk and Poudre Education Association

¶ 1     In 2010, the Colorado General Assembly enacted sweeping changes to the state's teacher evaluation and compensation system that, for the first time, tied a teacher's nonprobationary status to his or her performance.  As with the prior concept of tenure, a teacher who achieves nonprobationary status receives job protections not available to other teachers, including protection against unreasonable dismissal and hearing rights.

¶ 2     The General Assembly further provided that a nonprobationary teacher has the right to transfer his or her nonprobationary status from one school district to another by submitting specified evidence of his or her effectiveness as an educator.  This statutory right is known as nonprobationary portability.

¶ 3     In this case, we consider the narrow question whether a school district may restrict a teacher's ability to exercise the right of nonprobationary portability through use of a job application and form employment contract that require the teacher to relinquish the right to nonprobationary portability as a condition of employment. (We refer to such a job application and employment agreement as the Restrictions.)

¶ 4     Plaintiffs, Patricia Stanczyk and Poudre Education Association (Association), allege that defendants, Poudre School District R-1 and Poudre School District R-1 Board of Education (the Poudre Defendants), unlawfully stymied Stanczyk's and similarly situated teachers' exercise of their right to nonprobationary portability through use of the Restrictions.  The Poudre Defendants deny that their application form and form employment agreement are unlawful.  In the alternative, they assert that, under their prerogative of local control, school districts may disregard the statutory mandate of nonprobationary portability.

¶ 5     We affirm in part and reverse in part:

- We affirm the district court's award of summary judgment to the Poudre Defendants on Stanczyk and the Association's claim for violation of article XI, section 2 of the Colorado Constitution.

- We affirm the district court's award of summary judgment to the Poudre Defendants on Stanczyk's claims for breach of statutory contract, violation of due process rights, and mandamus relief.

- We reverse the district court's award of summary judgment to the Poudre Defendants on Stanczyk and the Association's claims for declaratory judgment.

- We hold that the Association is entitled to summary judgment on both the declaratory judgment claims because the Poudre Defendants' use of the Restrictions is unlawful and, under the nonprobationary portability statute, the Poudre Defendants must provide a qualifying teacher with nonprobationary status upon the teacher's compliance with the statutory requirements for nonprobationary portability.

- We hold that Stanczyk is entitled to summary judgment on the claim that the Poudre Defendants' use of the Restrictions unlawfully deprived her of the right to nonprobationary portability, but that disputed issues of material fact preclude the entry of summary judgment to any party on the claim for a declaratory judgment that she is entitled to nonprobationary status.

- We remand for further proceedings consistent with this opinion.

¶ 6    First, we discuss the history of the statute granting teachers the right to nonprobationary portability.  Second, we summarize the factual and procedural background of the case.  Third, we determine whether Stanczyk and the Association have standing to assert the claims they pleaded against the Poudre Defendants.  Fourth, we explain the standard of review applicable to this case.  Fifth, we consider the district court's grant of summary judgment to the Poudre Defendants on the Association and Stanczyk's claims for declaratory judgment.  Sixth, we consider the Association and Stanczyk's remaining claims.

### I.    The History of the Nonprobationary Portability Statute

### A.    Nonprobationary Status Replaced Tenure in Colorado

¶ 7    Before 1990, a teacher received tenure if he or she was continuously employed in the same school district for three academic years.  § 22-63-112(1), C.R.S. 1989.  Once tenured, a teacher could be dismissed only for certain, enumerated reasons relating to cause.  § 22-63-116, C.R.S. 1989.  Thus, with limited exceptions, a tenured teacher was "entitled to a position of employment as a teacher."  § 22-63-115, C.R.S. 1989; *see Johnson v. Sch. Dist. No. 1*, 2018 CO 17, ¶ 3, 413 P.3d 711, 713.

4

¶ 8    In 1990, the Teacher Employment, Compensation, and Dismissal Act (TECDA) eliminated all substantive references to tenure from Colorado's education statutes.  Ch. 150, sec. 1, §§ 22-63-101 to -403, 1990 Colo. Sess. Laws 1117-28; *see Johnson,* ¶ 4, 413 P.3d at 713-14.  "TECDA instead created a distinction between nonprobationary and probationary teachers, defining the latter as 'a teacher who has not completed three full years of continuous employment with the employing school district and who has not been reemployed for the fourth year.'"  *Sch. Dist. No. 1 v. Masters,* 2018 CO 18, ¶ 6, 413 P.3d 723, 726 (quoting § 22-63-103(7), C.R.S. 1990).

¶ 9    Nonprobationary teachers retained certain of the protections afforded to tenured teachers under prior law.  *See id.* at ¶ 7, 413 P.3d at 726.  Sections of TECDA still in force today provide that nonprobationary teachers can be dismissed only for enumerated reasons.  § 22-63-301, C.R.S. 2019; *see* § 22-63-302, C.R.S. 2019.  Additionally, before termination of their employment, nonprobationary teachers are entitled to receive notice and an opportunity to be heard by a neutral hearing officer.  § 22-63-302; *see* § 22-63-202(2)(c.5)(III)(B), C.R.S. 2019.

B.    SB 191 Tied Nonprobationary Status to Performance

¶ 10    In 2010, Senate Bill 10-191 (SB 191) changed the way Colorado teachers are evaluated and receive nonprobationary status.  Ch. 241, sec. 10, § 22-63-103, 2010 Colo. Sess. Laws 1070. SB 191 rests on the belief that a "system to evaluate the effectiveness of licensed personnel is crucial to improving the quality of education in this state" and that "such a system [should] be applicable to all licensed personnel in the school districts and boards . . . throughout the state."  § 22-9-102(1)(a), C.R.S. 2019.

¶ 11    SB 191 created a uniform, statewide framework for evaluating teachers, provided for development of statewide criteria to measure teacher effectiveness, mandated annual teacher evaluations, and required that fifty percent of a teacher's evaluation score be based on student academic growth.  Ch. 241, sec. 5, § 22-9-105.5, 2010 Colo. Sess. Laws 1056-61.

¶ 12    As part of this framework, the General Assembly linked nonprobationary status to teacher performance. § 22-9-102(1)(a)(V).  To attain nonprobationary status, a teacher must demonstrate three years of effectiveness, measured by the

statewide standards established in SB 191.

§§ 22-9-105.5(3)(d), -63-103(7), -63-203(1)(b), C.R.S. 2019.

### C. SB 191 Established Nonprobationary Portability

¶ 13    SB 191 granted teachers who had attained nonprobationary status the right to transfer that status from one district to another. § 22-63-203.5, C.R.S. 2019.  Section 22-63-203.5 provides that a nonprobationary teacher

> who is employed by a school district and is subsequently hired by a different school district may provide to the hiring school district evidence of his or her student academic growth data and performance evaluations for the prior two years for the purposes of retaining nonprobationary status.

*Id.* (We refer to such evidence and evaluations as Required Documentation.)  Importantly, the statute says that "[i]f, upon providing such data, the nonprobationary teacher can show two consecutive performance evaluations with effectiveness ratings in good standing, he or she *shall* be granted nonprobationary status in the hiring school district." *Id.* (emphasis added).  Before the General Assembly enacted section 22-63-203.5, school districts had the sole discretion whether to grant nonprobationary status to a nonprobationary teacher who relocated from another school district.

## D. School Districts Can Obtain Exemptions from Certain of the Statewide Mandates in the Education Statutes

¶ 14    School districts, the State Board of Education, and the General Assembly have different and distinct roles in overseeing the education of Colorado's children.  Under the Colorado Constitution, school districts have the authority to control "instruction in [their] public schools," Colo. Const. art. IX, § 15, while the State Board of Education possesses general supervisory power over Colorado's public schools, Colo. Const. art. IX, § 1(1).  The General Assembly is charged with "provid[ing] for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state" (the Thorough and Uniform Clause).  Colo. Const. art. IX, § 2.

¶ 15    In keeping with these differing roles, school districts may seek an exemption from the State Board of Education from most, but not all, of the statewide mandates set forth in title 22 of the Colorado Revised Statutes.  § 22-2-117, C.R.S. 2019.  (The mandates for which a school district may not obtain an exemption are listed in subsections (1)(b) and (1.5) of section 22-2-117.  Nonprobationary portability is not one of them.)

¶ 16    To obtain an exemption from a statewide mandate, a school district must obtain stakeholder support and provide public notice, § 22-2-117(1)(d), (2), and must satisfy the State Board of Education that the exemption "would enhance educational opportunity and quality within the school district and that the costs to the school district of complying with the requirements for which the waiver is requested significantly limit educational opportunity within the school district." § 22-2-117(1)(a).

## II.    Background

### A.    Underlying Facts

¶ 17    Stanczyk, a licensed teacher, worked in the Thompson School District from 1995 through the 2015-16 school year. She attained nonprobationary status in that district in the 1998-99 school year.

¶ 18    During her last year at the Thompson School District, Stanczyk applied for several positions with the Poudre School District (School District). Because the School District did not accept paper applications, Stanczyk applied for the positions though the School District's online application system, known as AppliTrack. Before Stanczyk could submit her completed

application through AppliTrack, she was required to confirm her agreement with the following statement:

> Any offers of employment extended by [School District] to me are conditioned on signing a probationary teacher contract and not asserting the portability of nonprobationary status I have acquired in another school district, if any.

¶ 19     Following this language, Stanczyk had to click a box acknowledging "I agree" that "I have read, understand, and agree to all the terms above." The AppliTrack form did not provide an "I disagree" option. Stanczyk clicked the "I agree" box and submitted her application. The School District's website did not include an explanation of how an applicant could avoid clicking "I agree" or a statement of its policy on nonprobationary portability.

¶ 20     The School District offered Stanczyk a probationary teaching position. Before signing her employment contract for that position, Stanczyk visited the School District's human resources office and asked whether the School District permitted nonprobationary portability. A person whose name and title do not appear in the record allegedly conferred with a coworker and responded to Stanczyk, "we don't do that here."

¶ 21      Victoria Thompson, the School District's Human Resources Director, however, asserted in an affidavit submitted in support of the Poudre Defendants' motion for summary judgment that the School District "does not require applicants for teaching positions to waive nonprobationary portability." (We refer to Victoria Thompson as "Ms. Thompson," rather than as "Thompson," to distinguish the references to her from the references to the Thompson School District.) Ms. Thompson said that the School District's human resources office can "allow the teacher to submit the application without agreeing to the waiver provision."

¶ 22      After Stanczyk visited the human resources office, she signed a contract with the School District for a probationary position. The contract said that Stanczyk would be "employed as a probationary teacher under C.R.S. § 22-63-203" and that she had "voluntarily waived [her] right under C.R.S. § 22-63-203.5 to assert the portability of [her] nonprobationary status." Additionally, the contract specified that it was "voidable at the option of the [Poudre School District R-1] Board of Education" if Stanczyk asserted "the portability of [her] nonprobationary status acquired in another school district."

11

¶ 23     At the conclusion of the academic year, a supervisor told Stanczyk that her contract with the School District would not be renewed.  A week later, Stanczyk informed Ms. Thompson by email that she wished to exercise her right to nonprobationary portability, specifically referencing section 22-63-203.5.  Stanczyk attached to the email her evaluations from the Thompson School District for the 2014-15 and 2015-16 school years, in which she had received ratings of "Highly Effective" and "Effective," respectively.  Ms. Thompson denied Stanczyk's request to transfer her nonprobationary status to the School District.

¶ 24     Ms. Thompson testified during her deposition that Stanczyk's request was "very incomplete."  Ms. Thompson did not contemporaneously tell Stanczyk, however, that the School District did not believe Stanczyk had submitted the Required Documentation.  While Ms. Thompson also said that Stanczyk had waited too long to request portability, Ms. Thompson testified that she did not feel comfortable specifying the School District's deadline to request nonprobationary portability.

¶ 25     Several days after Ms. Thompson denied Stanczyk's request to exercise her right to nonprobationary portability, the Poudre School

District R-1 Board of Education confirmed that Stanczyk's contract would not be renewed. Because the Poudre Defendants considered Stanczyk to be a probationary teacher, they did not follow the statutory procedure for terminating a nonprobationary teacher, which would have afforded her notice and an opportunity to be heard by a neutral hearing officer. § 22-63-302.

## B. Procedural History

¶ 26 When her contract was not renewed, Stanczyk and the Association, of which Stanczyk is a member, filed suit against the Poudre Defendants. Stanczyk and the Association pleaded six claims for relief seeking:

(1) a declaratory judgment that the Poudre Defendants must grant nonprobationary status to Stanczyk and similarly situated teachers who provide the Required Documentation (First Claim for Declaratory Judgment);

(2) a declaratory judgment that the Poudre Defendants' use of the Restrictions violates Colorado law and is contrary to public policy (Second Claim for Declaratory Judgment);

13

(3) mandamus relief (if other relief is not available) to compel the Poudre Defendants to grant nonprobationary status to Stanczyk and similarly situated teachers who provide the Required Documentation;

(4) a determination that section 22-63-203.5 creates a statutory contract between the School District and its teachers, and that the School District breached such contract with Stanczyk and similarly situated teachers;

(5) a determination that the Poudre Defendants deprived Stanczyk and similarly situated teachers of a property interest in continued employment without due process of law, in violation of the Colorado Constitution; and

(6) a determination that the Poudre Defendants' use of the Restrictions violates the guarantee of a "thorough and uniform system of free public schools" set forth in the Thorough and Uniform Clause and is therefore preempted by section 22-63-203.5.

¶ 27 The parties cross-moved for summary judgment.

¶ 28    As relevant to this appeal, the Poudre Defendants contend they were entitled to summary judgment because:

(1)    Stanczyk and the Association lack standing;

(2)    Stanczyk waived her right to nonprobationary portability or, in the alternative, Stanczyk's request for nonprobationary portability was untimely and she did not provide the Poudre Defendants with the Required Documentation;

(3)    the Poudre Defendants cannot be compelled to make the discretionary decision whether Stanczyk submitted the Required Documentation;

(4)    because section 22-63-203.5 creates a statutory right, and not a constitutional right, the Poudre Defendants could not have denied Stanczyk due process rights; and

(5)    section 22-63-203.5 does not create a statutory contract or a property interest.

¶ 29    Stanczyk and the Association argued they were entitled to summary judgment on their claims for declaratory relief because there is no factual dispute that the Poudre Defendants unlawfully deprive teachers of their right to nonprobationary portability, in

15

violation of section 22-63-203.5. They also contended that the word "shall" in section 22-63-203.5 creates a statutory contract between the School District and the nonprobationary teachers it hires. Similarly, they argued that nonprobationary status is a property right and that the Poudre Defendants unconstitutionally deprived Stanczyk and similarly situated teachers of such property right without due process of law. Finally, they asserted that if no other relief is granted, they are entitled to mandamus relief because the Poudre Defendants had a duty under section 22-63-203.5 to provide nonprobationary status to Stanczyk and similarly situated teachers.

¶ 30    The district court granted summary judgment to the Poudre Defendants. The court determined:

(1)    Stanczyk had standing to bring all six of her claims and the Association had associational standing to join in Stanczyk's two declaratory judgment claims and her claim that the Poudre Defendants' use of the Restrictions violates the Thorough and Uniform Clause;

(2) school districts may require teachers to relinquish their right to nonprobationary portability as a condition of employment;

(3) Stanczyk waived her right to nonprobationary portability by signing the School District's form employment agreement;

(4) because Stanczyk waived that right, the Poudre Defendants were not required to grant her nonprobationary status;

(5) the Poudre Defendants' use of the Restrictions did not violate section 22-63-203.5 because local school boards have general authority over teacher employment decisions;

(6) Stanczyk could not succeed on her claims for breach of contract and violation of her due process rights because section 22-63-203.5 "does not create a contract with teachers by operation of law and teachers do not have a property interest in nonprobationary portability"; and

(7) Stanczyk and the Association "did not provide any evidence that requiring teachers to waive their right to

request nonprobationary portability has any effect" on whether the state's public school system is "thorough and uniform," and therefore they could not succeed on their claim arising under the Thorough and Uniform Clause.

¶ 31 On appeal, Stanczyk and the Association again argue that the Poudre Defendants' use of the Restrictions violates the statewide mandate codified in section 22-63-203.5.

¶ 32 The Poudre Defendants deny that their use of the Restrictions is unlawful and assert that the district court correctly awarded them summary judgment on Stanczyk's claims because she waived the right to nonprobationary portability. They also argue that Stanczyk and the Association lack standing.

III. The District Court Correctly Decided the Standing Issue

Before we address the district court's ruling on the merits, we must consider the Poudre Defendants' argument that Stanczyk and the Association lack standing to bring their claims. *Barber v. Ritter*, 196 P.3d 238, 245 (Colo. 2008) ("Standing is a threshold issue that must be satisfied in order for a court to decide a case on the merits."). "In determining whether a plaintiff has alleged an injury

sufficient to confer standing, an appellate court considers the allegations in the complaint, as well as testimony and other documentary evidence in the record." *Rechberger v. Boulder Cty. Bd. of Cty. Comm'rs*, 2019 COA 52, ¶ 8, 454 P.3d 355, 357. "Whether a plaintiff has standing to sue is a question of law that we review de novo." *Barber*, 196 P.3d at 245.

¶ 33 Because Stanczyk and the Association jointly asserted all claims pleaded in their complaint, we consider whether (1) Stanczyk has standing as an individual and (2) the Association has associational standing to assert the claims on behalf of its members.

A. Stanczyk Has Standing to Assert All Six of Her Claims

¶ 34 To establish standing, an individual "must satisfy a two-part test requiring (1) that the plaintiff 'suffered injury in fact,' and (2) that the injury was to a 'legally protected interest as contemplated by statutory or constitutional provisions.'" *Barber*, 196 P.3d at 245 (quoting *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 538 (1977)).

¶ 35 Under the first prong of the test, "[t]he injury may be tangible, such as physical damage or economic harm; however, it may also

be intangible, such as aesthetic issues or the deprivation of civil liberties. Deprivations of many legally created rights, although themselves intangible, are nevertheless injuries-in-fact." *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004) (citation omitted). Standing, however, is not established by an injury that is overly "indirect and incidental" to the defendant's action. *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 9, 338 P.3d 1002, 1007 (quoting *Ainscough*, 90 P.3d at 856).

¶ 36    As the district court correctly pointed out, it is undisputed that the Poudre Defendants "denied Stanczyk's request for nonprobationary portability, and, therefore, allegedly caused her injury." The Poudre Defendants argue the opposite: that Stanczyk cannot establish the first prong because "she caused her own injury by affirmatively waiving her right to transfer her nonprobationary status and subsequently waiting eight months to request portability." We disagree with the Poudre Defendants.

¶ 37    The Poudre Defendants rely on *People in Interest of J.C.S.*, 169 P.3d 240, 245 (Colo. App. 2007), for the proposition that the injury-in-fact requirement cannot be satisfied if the plaintiff caused the injury to herself. In *J.C.S.*, however, the division acknowledged that

Colorado has never adopted a "self-inflicted injury limitation on standing." *Id.* at 246. Rather, whether the plaintiff caused her own injury is a consideration in determining whether the plaintiff can prove causation. *Id.* Under *J.C.S.*, the Poudre Defendants cannot establish that Stanczyk lacks standing even if her injury was self-inflicted. Thus, we agree with the district court that Stanczyk has properly alleged an injury in fact.

¶ 38      Although the district court also addressed the Poudre Defendants' argument under the second prong of the standing analysis — whether Stanczyk suffered an injury to a legally protected interest — the Poudre Defendants do not pursue this argument on appeal. We therefore deem their "legally protected interest" argument abandoned. *Armed Forces Bank, N.A. v. Hicks*, 2014 COA 74, ¶ 38, 365 P.3d 378, 386 ("[A]rguments raised in the trial court and not pursued on appeal are deemed abandoned[.]" (citing *People v. Dash*, 104 P.3d 286, 293 (Colo. App. 2004))).

¶ 39      Thus, we affirm the district court's determination that Stanczyk had standing.

### B. The Association Has Associational Standing to Join in Stanczyk's Claims for Declaratory Judgment and Claim Arising Under the Thorough and Uniform Clause

¶ 40    We agree with the district court that the Association has associational standing to join in three of Stanczyk's claims — (1) the First Claim for Declaratory Judgment (seeking a determination that the Poudre Defendants must grant nonprobationary status whenever a qualified teacher submits the Required Documentation); (2) the Second Claim for Declaratory Judgment (seeking a determination that the Poudre Defendants' use of the Restrictions is unlawful); and (3) the claim that the Poudre Defendants' use of the Restrictions violates the Thorough and Uniform Clause.  Because the Association does not challenge the district court's ruling that it lacks standing to assert the remaining claims, we consider only the Poudre Defendants' challenge to the Association's associational standing to join in the three claims listed above.  *See id.* (explaining we do not consider arguments that have not been raised on appeal).

> [A]n organization has associational standing when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted, nor the relief requested,

> requires the participation of individual members of the lawsuit.

*Colo. Union of Taxpayers Found. v. City of Aspen*, 2018 CO 36, ¶ 10, 418 P.3d 506, 510.

### 1. The First Claim for Declaratory Judgment as to the Association

¶ 41 The Association seeks a declaratory judgment that the Poudre Defendants must grant qualifying teachers nonprobationary status if the teachers provide the Required Documentation. Under the first prong of the standing analysis, an organization has associational standing when its members have standing to sue in their own right. *Id.* Because Stanczyk has standing to bring this claim, so does the Association.

¶ 42 Under the second prong, we consider whether a declaratory judgment addressing teachers' exercise of their right to nonprobationary portability would be germane to the Association's purpose. *See id.* We conclude it would be germane. *See Kelley v. Shelby Cty. Bd. of Educ.*, 198 F. Supp. 3d 842, 850 (W.D. Tenn. 2016) (Protecting teachers "from dismissal in violation of [state] law [is] an interest germane to [a teachers' union's] organizational purpose.").

¶ 43    The Poudre Defendants further argue that the Association lacks standing to assert the Second Claim because a teacher must exercise the right to nonprobationary portability before the school district hires the teacher and, thus, before the teacher is eligible to join a teachers' union. But, as we explain in Part V.A.2 below, section 22-63-203.5 grants the right to nonprobationary portability to nonprobationary teachers whom a school district has already hired and who, therefore, are eligible to join the teachers' union. For these reasons, the Association meets the second prong of the standing test.

¶ 44    Finally, under the third prong of the standing test, we conclude that, from the Association's perspective, the First Claim for Declaratory Judgment does not require the participation of individual teachers because a declaratory judgment that the Poudre Defendants must comply with section 22-63-203.5 would impact all Association members in Stanczyk's position, and not Stanczyk alone.

### 2. The Second Claim for Declaratory Judgment as to the Association

¶ 45 The Association seeks a declaratory judgment that the Poudre Defendants' use of the Restrictions violates Colorado law. For the reasons explained above, the Association meets all three prongs to establish standing to assert this claim: Stanczyk has standing and is a member of the Association; determining whether the Poudre Defendants' use of the Restrictions violates Colorado law is germane to the Association's purpose; and such a decision would apply to all Association members similarly situated to Stanczyk.

### 3. The Association's Third Claim that the Poudre Defendants Violated the Thorough and Uniform Clause

¶ 46 The Association seeks a ruling that the Poudre Defendants violated the Thorough and Uniform Clause by requiring teachers to relinquish their right to nonprobationary portability as a condition of employment.

¶ 47 For the same reasons why the Association has standing to assert its claims for declaratory judgment, it also has associational standing to join Stanczyk in asserting this constitutional claim.

¶ 48 Thus, we affirm the district court's ruling on standing.

## IV. We Review De Novo the District Court's Decision to Grant Summary Judgment to the Poudre Defendants

¶ 49 Summary judgment "is a drastic remedy, to be granted only when there is a clear showing that the applicable standards have been met." *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003). A district court may grant summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with [supporting and opposing] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c).

¶ 50 The party moving for summary judgment bears the "burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party." *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988). If the moving party can establish the absence of record evidence to support the nonparty's case, the burden shifts to the nonmoving party to show a triable issue of fact. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 713 (Colo. 1987).

¶ 51    When all parties move for summary judgment, the trial court must "consider each motion separately, review the record, and determine whether a genuine dispute as to any fact material to that motion exists." *Churchey,* 759 P.2d at 1340. "One party's assertion of undisputed facts cannot 'be applied in connection with' the other party's cross-motion for summary judgment." *Jones v. Samora,* 2016 COA 191, ¶ 44, 395 P.3d 1165, 1174 (quoting *Churchey,* 759 P.2d at 1340). "If there are genuine disputes regarding facts material to both motions, the court must deny both motions." *Churchey,* 759 P.2d at 1340.

¶ 52    "In reviewing a summary judgment order, an appellate court applies the same standard as the district court." *City of Fort Collins v. Colo. Oil,* 2016 CO 28, ¶ 9, 369 P.3d 586, 590. Thus, we review a trial court's decision to grant a motion for summary judgment de novo. *S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC,* 2019 COA 58, ¶ 11, 442 P.3d 1012, 1015. Our task on review "is to determine whether a genuine issue of material fact existed and whether the district court correctly applied the law." *Colo. Oil,* ¶ 9, 369 P.3d at 590.

## V. The District Court Erred in Awarding Summary Judgment to the Poudre Defendants on Stanczyk and the Association's Declaratory Judgment Claims

¶ 53    Stanczyk and the Association's claims for declaratory judgment rest on their contention that the Poudre Defendants' use of the Restrictions violates section 22-63-203.5. But the district court did not reach the merits of this argument. Rather, it awarded summary judgment to the Poudre Defendants on the declaratory judgment claims based upon its determination that the right to nonprobationary portability is waivable and that Stanczyk waived it. The district court misread section 22-63-203.5, however, and did not need to reach the issue of whether the right to nonprobationary portability can be waived.

¶ 54    We resolve the case by considering the more fundamental question of whether the Poudre Defendants' use of the Restrictions, as reflected in the parties' summary judgment motions and briefs, violates section 22-63-203.5.

¶ 55    To determine whether the Poudre Defendants' use of the Restrictions is lawful, we first review the nonprobationary portability statute. Second and third, we examine the Poudre Defendants' use of the Restrictions and, in doing so, determine

whether the Poudre Defendants violated section 22-63-203.5. Fourth, we discuss the exclusive means by which the Poudre Defendants could avoid the mandate of section 22-63-203.5. Fifth, we consider the Poudre Defendants' local control argument. We then apply these analyses in determining whether the district court erred in granting summary judgment to the Poudre Defendants on Stanczyk and the Association's declaratory judgment claims.

### A. The Nonprobationary Portability Statute

#### 1. Rules of Statutory Interpretation

¶ 56    The meaning of section 22-63-203.5 is a question of law that we review de novo. *Wolf Ranch, LLC v. City of Colorado Springs*, 220 P.3d 559, 563 (Colo. 2009).

¶ 57    When we interpret a statute, "[w]e begin with the statutory language itself and give the text its ordinary and commonly accepted meaning." *Rooftop Restoration, Inc. v. Am. Family Mut. Ins. Co.*, 2018 CO 44, ¶ 12, 418 P.3d 1173, 1176. "The language at issue must be read in the context of the statute as a whole and the context of the entire statutory scheme. Thus, our interpretation should give consistent, harmonious, and sensible effect to all parts of a statute." *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241

P.3d 932, 935 (Colo. 2010) (citations omitted).  "A 'cardinal principle of statutory construction' is that no clause, sentence, or word is 'superfluous, void, or insignificant.'"  *Falcon Broadband, Inc. v. Banning Lewis Ranch Metro. Dist. No. 1*, 2018 COA 92, ¶ 31, ___ P.3d ___, ___ (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

2. Section 22-63-203.5 Requires School Districts to Provide Nonprobationary Status to Qualified Teachers Who Submit the Required Documentation

¶ 58    The plain language of section 22-63-203.5 grants qualified teachers the sole discretion to exercise the right of nonprobationary portability:  "[U]pon providing [the Required Documentation], the nonprobationary teacher . . . *shall* be granted nonprobationary status in the hiring school district."  (Emphasis added.)  Thus, if a qualified teacher provides a school district with the Required Documentation, the hiring school district must provide the teacher with nonprobationary status.  *See Colo. Real Estate Comm'n v. Vizzi*, 2019 COA 33, ¶ 27, ___ P.3d ___, ___ (explaining that, absent a clear indication of contrary legislative intent, the word "shall" in a statute means that the General Assembly intended the listed action to be mandatory).

¶ 59    This statutory right belongs to any qualifying teacher who (1) was "employed by a school district"; (2) is "subsequently hired by a different school district" (called the "hiring school district"); and (3) submits the Required Documentation.  § 22-63-203.5.

B.    The Poudre Defendants' Use of the Restrictions

¶ 60    The parties' summary judgment motions and briefs reflect no dispute that the Poudre Defendants imposed the Restrictions on Stanczyk and other similarly situated teachers.  First, the School District's online AppliTrack application form required teachers to acknowledge their waiver of the right to nonprobationary portability by clicking the "I accept" button before they could submit the application.  In her deposition testimony and affidavit, Ms. Thompson claimed that a teacher could ask the School District's human resources department to override AppliTrack and "allow the teacher to submit the application without agreeing to the waiver provision."

¶ 61    Yet the record shows that neither the AppliTrack form nor the School District's website indicated that a teacher could apply for a job without waiving the right to nonprobationary portability or how the teacher could do so.  Thus, the record shows only that a teacher

must agree to waive nonprobationary portability to submit the online application. The information the School District presented to the public created the impression, intentionally or otherwise, that the School District did not permit teachers to exercise the right to nonprobationary portability.

¶ 62 Second, the School District used a form employment agreement stating that, by signing, the teacher "voluntarily waived [his or her] right" to assert nonprobationary portability and that the contract is "voidable at the option of the [School District]" if the teacher asserted the right to nonprobationary portability.

¶ 63 Although the parties disagree whether a teacher can circumvent the Restrictions, there is no dispute that the Poudre Defendants used the Restrictions to require teachers to relinquish the right to nonprobationary portability as a condition of employment. Even if teachers could somehow apply for employment with the School District without agreeing to the waiver language in the AppliTrack form, the Poudre Defendants would still retain, through the form employment agreement, the power to hire only those teachers who surrendered their right to nonprobationary portability.

## C. The Poudre Defendants' Use of the Restrictions Violates Section 22-63-203.5

¶ 64    A school district may not unreasonably restrict a teacher's exercise of the right to nonprobationary portability under section 22-63-203.5.  The Poudre Defendants' use of the Restrictions is unreasonable because it reverts the portability decision from the teacher back to the school district, thereby writing section 22-63-203.5 out of the statute book.

¶ 65    Before the General Assembly adopted section 22-63-203.5, if an experienced teacher who had achieved nonprobationary status wanted to accept a position with a different school district, the teacher had no choice but to relinquish his or her nonprobationary status (and the associated protections) — and start anew as a probationary teacher — unless the hiring school district offered the teacher a nonprobationary position.  The decision whether the teacher would receive nonprobationary status in the hiring school district exclusively belonged to the hiring school district.

¶ 66    Section 22-63-203.5 changed the law by giving the teacher the sole power to exercise the right of portability.  But the statute has significance only if teachers retain this power.

¶ 67    The Poudre Defendants' use of the Restrictions enables them to choose which of the School District's teachers, if any, may enjoy the benefits of 22-63-203.5 or even deny employment to all teachers who try to exercise their right to nonprobationary portability. The AppliTrack form, at best, discourages teachers from exercising their right to nonprobationary portability. The School District's form employment contract, however, empowers the School District to render a teacher's employment contract void if the teacher attempts to benefit from his or her statutory right to nonprobationary portability.

¶ 68    For these reasons, we conclude that the Poudre Defendants' use of the Restrictions violates section 22-63-203.5. Our holding is narrow. Because we conclude the Poudre Defendants' use of the Restrictions is unlawful, we need not address the circumstances, if any, under which a teacher — undeterred by the Restrictions — can voluntarily waive the right to nonprobationary portability. *See Ritter v. Jones*, 207 P.3d 954, 961 (Colo. App. 2009) ("[W]aiver of a statutory protection must be voluntary."). Nor need we consider whether a school district may place reasonable restrictions, such as

34

a deadline to request nonprobationary status, on a teacher's exercise of the right to nonprobationary portability.

> ### D.   A School District May Obtain an Exemption from Section 22-63-203.5's Mandate from the State Board of Education

¶ 69    The Poudre Defendants are not left without a remedy if they wish to deny the right to nonprobationary portability to their teachers.  As discussed in Part I.D above, section 22-2-117 authorizes the State Board of Education to balance the school district's right to local control against a statewide mandate.  If the Poudre Defendants can satisfy the statutory criteria for obtaining an exemption from the mandate set forth in 22-63-203.5, the State Board of Education may grant such an exemption.

¶ 70    The enactment of the statute authorizing the State Board of Education to exempt school districts from statewide statutory mandates means that school districts may not deny teachers a right guaranteed by statute without obtaining the State Board of Education's authorization.  *See People in Interest of R.J.*, 2019 COA 109, ¶ 8, 451 P.3d 1232, 1235 (explaining that the inclusion of certain terms in a rule or statute implies the exclusion of others).  Thus, an exemption from the State Board of Education is the

exclusive means by which the Poudre Defendants may avoid compliance with section 22-63-203.5. (The parties' summary judgment motions and briefs do not indicate whether the Poudre Defendants sought the State Board of Education's authorization to circumvent section 22-63-203.5's mandate.)

E.    The Poudre Defendants' Prerogative of Local Control Does Not Include the Authority to Disregard the Statewide Statutory Mandate of Nonprobationary Portability

¶ 71    The Poudre Defendants' local control argument is unconvincing. The Poudre Defendants argue that "holding portability to be inalienable would fully usurp the [School] District's power to offer employment on the terms and conditions it deems appropriate" and, therefore, would violate the Poudre Defendants' prerogative of local control.

¶ 72    Local control does not permit a school district to ignore a statewide statutory mandate without obtaining an exemption from the State Board of Education. Taken to its logical extreme, the Poudre Defendants' argument would allow every school district in Colorado to ignore section 22-63-203.5 — or any other statewide statutory mandate. To paraphrase Justice Cardozo, this would

result in local control run riot. *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 553 (1935) (Cardozo, J., concurring).

### F. The Association, But Not Stanczyk, Is Entitled to Summary Judgment on the First Claim for Declaratory Judgment

¶ 73    Stanczyk and the Association seek a declaratory judgment that the Poudre Defendants must grant Stanczyk and similarly situated teachers nonprobationary status if they provide the Poudre Defendants with the Required Documentation. Given our determination that the Poudre Defendants' use of the Restrictions violates section 22-63-203.5, we hold that the Association is entitled to summary judgment on the First Claim for Declaratory Judgment. The nonprobationary portability statute makes clear that, if a qualified teacher complies with the requirements for nonprobationary portability, the Poudre Defendants must grant the teacher that status. It logically follows that the Poudre Defendants cannot place unreasonable roadblocks in the path of a teacher's exercise of the right to nonprobationary portability.

¶ 74    Stanczyk is not entitled to summary judgment on the First Claim for Declaratory Judgment, however, because the record reflects disputed issues of material fact as to whether she provided

the School District with the Required Documentation. *See Dep't of Nat. Res. v. 5 Star Feedlot Inc.*, 2019 COA 162M, ¶ 37, ___ P.3d ___, ___ (holding that the Court of Appeals may direct entry of summary judgment in favor of the moving party where the non-moving party did not come forward with evidence demonstrating a genuine issue of material fact).

¶ 75 Section 22-63-203.5 states that a nonprobationary teacher "may provide to the hiring school district evidence of his or her *student academic growth data* and performance evaluations for the prior two years for the purposes of retaining nonprobationary status." § 22-63-203.5 (emphasis added). Stanczyk alleges that she provided the School District with the required student academic growth data and performance evaluations. The Poudre Defendants, however, contend that Stanczyk "failed to provide evidence of student academic growth data from her prior two years." Stanczyk counters that her evaluations included "student academic growth data" because these scores accounted for "50% of [her] overall evaluation score as required by [statute]."

¶ 76 This factual dispute precludes resolution of the First Claim for Declaratory Judgment on summary judgment as to Stanczyk.

¶ 77    In sum, we reverse the district court's award of summary judgment to the Poudre Defendants on Stanczyk and the Association's First Claim for Declaratory Judgment.  We hold that the Association is entitled to summary judgment on the First Claim for Declaratory Judgment and that disputed issues of material fact preclude the entry of summary judgment in favor of any party on the First Claim for Declaratory Judgment as to Stanczyk.

### G.    Stanczyk and the Association Are Entitled to Summary Judgment on Their Second Claim for Declaratory Judgment

¶ 78    Stanczyk and the Association seek a declaratory judgment that the Poudre Defendants' use of the Restrictions is unlawful. Based on our determination that the Poudre Defendants' use of the Restrictions violates section 22-63-203.5, we hold that the district court erred in granting summary judgment to the Poudre Defendants on the Second Claim for Declaratory Judgment, and that Stanczyk and the Association are entitled to summary judgment on this claim.

## VI. We Affirm the District Court's Award of Summary Judgment to the Poudre Defendants on Stanczyk and the Association's Remaining Claims

### A. Mandamus Relief

¶ 79    A party may obtain mandamus relief only if other relief is unavailable. *See Gandy v. Williams*, 2019 COA 118, ¶ 24, ___ P.3d ___, ___. Because we hold that Stanczyk is entitled to summary judgment on the Second Claim for Declaratory Judgment, she may not obtain mandamus relief. Thus, while our reasoning differs from that of the district court, we affirm the district court's holding that the Poudre Defendants are entitled to summary judgment on Stanczyk's mandamus claim. *See Steamboat Springs Rental & Leasing, Inc. v. City & Cty. of Denver*, 15 P.3d 785, 786 (Colo. App. 2000) ("An appellate court may affirm a correct judgment based on reasoning different from that relied on by the trial court.").

### B. Breach of Statutory Contract

¶ 80    Stanczyk asserts that, by operation of law, section 22-63-203.5 creates a contract between her and the School District, and that the School District breached such contract. We disagree.

¶ 81    In *Masters*, the Colorado Supreme Court analyzed when provisions of the education statutes create a statutory contract

between teachers and their school districts. *Masters*, ¶ 22, 413 P.3d at 729. The court explained that, in prior education statutes, the General Assembly had indicated its intention to grant teachers statutory contract rights. *Id.* In TECDA, however, the General Assembly removed

> key language from TECDA's predecessor statute . . . . Whereas [the Teacher Employment, Dismissal, and Tenure Act of 1967 (TEDTA)] made pervasive use of the term "tenure," TECDA omits it entirely. And whereas TEDTA provided that under certain circumstances a teacher is "entitled to a position of employment as a teacher," TECDA uses no such entitlement language.

*Id.* at ¶¶ 20-21, 413 P.3d at 729 (citations omitted). The court, therefore, concluded that "TECDA did not create a contractual relationship" between teachers and their school districts. *Id.* at ¶ 22, 413 P.3d at 729. Because section 22-63-203.5 appears in the same title and article of the Colorado statutes as TECDA, we conclude that the nonprobationary portability statute also does not create a statutory contract.

## C. Due Process

¶ 82 Stanczyk contends that the Poudre Defendants violated her due process rights by depriving her of a property right without

41

proper notice and an opportunity to be heard. "The United States Constitution prohibits states from depriving any person of property without due process of law." *Johnson*, ¶ 25, 413 P.3d at 718 (citing U.S. Const. amend. XIV). Therefore, if, as Stanczyk contends, Colorado's nonprobationary teachers have a property interest in continued employment, the General Assembly could not deprive them of that interest without due process.

¶ 83    The Colorado Supreme Court, however, has explained that "because TECDA eliminated the word 'tenure' and other entitlement and durational language, a nonprobationary teacher has no vested property interest in salary and benefits." *Id.* at ¶ 24, 413 P.3d at 717-18.

¶ 84    Stanczyk attempts to distinguish the court's holding in *Johnson* by arguing that the right to nonprobationary portability is a different type of property right from "salary and benefits," and that the word "shall" in section 22-63-203.5 suggests the type of durational language used in the earlier tenure statutes. We disagree.

¶ 85    The use of "shall" alone did not create an entitlement in those statutes; rather, the word established the property right only when

used in context. The *Johnson* court explained that "TEDTA guaranteed that a tenured teacher 'shall be entitled to a position of employment as a teacher.'" *Id.* (quoting § 22-63-115, C.R.S. 1988). The court concluded that the removal of this language from the education statutes demonstrated the General Assembly's intent to eliminate that expectancy. *Id.* Thus, we conclude that Stanczyk's due process claim fails as a matter of law.

D. Violation of the Thorough and Uniform Clause

¶ 86 Stanczyk and the Association claimed that the Poudre Defendants' refusal to allow teachers to exercise the right of nonprobationary portability violates the Thorough and Uniform Clause. As the district court noted, however, they did not provide any support for this position in their motion for summary judgment. For this reason, the district court granted summary judgment in favor of the Poudre Defendants on this claim. We agree and affirm the district court's decision on Stanczyk and the Association's claim arising under the Thorough and Uniform Clause. *See Armed Forces Bank, N.A.*, ¶ 38, 365 P.3d at 386.

43

## VII. Conclusion

(1)  We affirm the district court's determination that Stanczyk has standing to assert all six of her claims and the Association has standing to join in Stanczyk's declaratory judgment claims and claim arising under the Thorough and Uniform Clause.

(2)  We affirm the district's court award of summary judgment in favor of the Poudre Defendants on Stanczyk's claims for breach of statutory contract, due process, and mandamus relief.

(3)  We affirm the district's court award of summary judgment in favor of the Poudre Defendants on Stanczyk and the Association's claim arising under the Thorough and Uniform Clause.

(4)  We reverse the district court's award of summary judgment in favor of the Poudre Defendants on Stanczyk and the Association's claims for declaratory judgment.

(5)  We conclude that disputed issues of material fact preclude the award of summary judgment to any party

on the First Claim for Declaratory Judgment as to Stanczyk.

(6)     We remand for further proceedings consistent with this opinion, including (a) entry of summary judgment in favor of the Association on the First and Second Claims for Declaratory Judgments, (b) entry of summary judgment in favor of Stanczyk on the Second Claim for Declaratory Judgment, and (c) a trial on the merits on the First Claim for Declaratory Judgment as to Stanczyk.

JUDGE WEBB and JUDGE DUNN concur.